IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 2:05-cr-0240-GEB |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| HAMID HAYAT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Prior to trial, Defendant Hamid Hayat moved to dismiss Counts Two and Three of the Second Superceding Indictment, contending these counts were multiplicitous of Count Four. (Def.'s Am. Mot. to Dismiss, Jan. 30, 2006.)  Ruling on the motion was deferred until after a trial record was developed.[1]  (Order, Feb. 2, 2006.)  At trial, after the close of the government's case-in-chief, Defendant moved for a judgment of acquittal on Counts Two and Three under

---

[1]    As indicated in United States v. Hubbell, a court should usually defer ruling on a pre-trial multiplicity motion and instead "sort[] out [the motion] post-trial [because] . . . . [t]he factual issues as to what statements were made and what acts . . . were committed, as well as whether the later acts or statements further impaired the operations of government, need development at trial and attempting to decide such issues pre-trial would be premature."  177 F.3d 11, 14 (D.C. Cir. 1999) (citing United States v. Salas-Camacho, 859 F.2d 788, 791 (9th Cir. 1988)).

Rule 29 of the Federal Rules of Criminal Procedure, again arguing
these counts were multiplicitous of Count Four.  Decision on the
motion was reserved under Rule 29(b) and the counts were submitted to
the jury.[2]  Now that the jury has returned a guilty verdict on all
counts and a complete record has been developed, this decision issues
on the pending multiplicity motions.

BACKGROUND

At issue are Counts Two, Three, and Four of the Second
Superceding Indictment that charge Defendant with knowingly making a
false statement to the Federal Bureau of Investigation ("FBI") in
violation of 18 U.S.C. § 1001(a).[3]  Count Two charges Defendant
falsely stated on June 3, 2005, "that he never attended a jihadist
camp"; Count Three charges Defendant falsely stated on June 4, 2005,
"that he never received weapons or other types of jihadist training";
and Count Four charges Defendant falsely stated on June 4, 2005, "that
he never received training to fight against the United States."

At trial, FBI Special Agent Pedro Aguilar testified he
interviewed Defendant on June 3, 2005, at Defendant's home in Lodi,

---

[2]    Decision on the motion was reserved because the record did not
indicate Defendant would be prejudiced by the reservation, and the trial
court is permitted "to balance the defendant's interest in an immediate
resolution of the motion against the interest of the government in
proceeding to a verdict thereby preserving its right to appeal in the
event a verdict of guilty is returned but is then set aside by the
granting of a judgment of acquittal."  Fed. R. Crim. Pro. 29 advisory
committee's note.

[3]    18 U.S.C. § 1001 provides: "[W]hoever, in any matter within
the jurisdiction of the executive, legislative, or judicial branch of
the Government of the United States, knowingly and willfully . . . makes
any materially false, fictitious, or fraudulent statement or
representation . . . shall be fined under this title, imprisoned not
more than 5 years or, if the offense involves international or domestic
terrorism . . . imprisoned not more than 8 years, or both."

California.  During the interview, Special Agent Aguilar asked
Defendant if he ever attended a terrorist training camp in Pakistan,
if he ever attended a terrorist training camp anywhere, if he ever
attended a jihadist camp, and if he ever attended a jihadist madrassa.
Defendant responded no to each of these questions.

FBI Special Agent Harry Sweeney testified at trial that he
interviewed Defendant on June 4, 2005, at a FBI office in Sacramento,
California.  During the interview, Special Agent Sweeney asked
Defendant if he ever received weapons training at a jihadist camp and
if he ever received training at a jihadist camp to fight against the
United States.  Defendant responded no to each question.

Following the jury's guilty verdict, an Order scheduled
"argument and proceeding[]" on the multiplicity motions, specifically,
on the question whether the false statements charged in Counts Three
and Four caused "further impairment" to government operations.  United
States v. Hayat, 2006 WL 1222665, at *2 (E.D. Cal. May 4, 2006)
(stating that false statement counts are not multiplicitous if "the
later false statement further impaired the operations of the
government").  The government subsequently filed a supplemental
opposition to the motions and a declaration by Special Agent Sweeney.
(Gov't Supp. Opp'n, May 4, 2006.)

At the post-trial proceeding, Defendant argued the
declaration should not be considered.  The government countered that
both the declaration and Special Agent Sweeney's proffered post-trial
testimony should be considered.  The government was allowed to present
Special Agent Sweeney's post-trial testimony because decision could be
made at a later time whether the evidence could be considered.  The
government then presented additional testimony from Special Agent

Sweeney in support of its contention that the later false statements further impaired the operations of the government.

Special Agent Sweeney testified he has received specialized training and certification to conduct polygraph examinations, and his primary duty in conducting these examinations is to assess the veracity of an individual of interest.  He explained that polygraph examinations are conducted in three distinct stages: pre-test, test, and post-test.  During the pre-test stage, he interviews an individual to determine his or her knowledge on a certain topic.  During the testing stage, he monitors the individual's physiological responses to determine whether those responses indicate deception.  If the test results indicate deception, Special Agent Sweeney attempts to obtain admissions from the individual during the post-test stage.

Special Agent Sweeney further testified his interview of Defendant on June 4, 2005, occurred during the administration of a polygraph examination.  He stated that about half an hour into the pre-test stage, Defendant denied receiving weapons or other jihadist training, and about fifteen minutes later, he denied receiving training to fight against the United States.  Special Agent Sweeney said Defendant made similar denials during the test stage and during these denials he determined Defendant's physiological responses were indicative of deception on each of these questions.

In addition, Special Agent Sweeney testified that one of the FBI's functions includes investigation of terrorist threats.  He stated that when the FBI learns of a terrorist threat, its immediate goals are to assess the scope of the threat, identify the individuals involved, and if possible, stop the threat before it reaches fruition. Special Agent Sweeney testified that the FBI attempts to discern the

nature of the terrorist threat, including whether it is a domestic
threat that jeopardizes the safety of United States residents.
Special Agent Sweeney also emphasized the importance of acting quickly
once a terrorist threat materializes in order to avert potential harm.

After Special Agent Sweeney was excused, defense counsel
requested a short recess in order to decide whether to call a rebuttal
witness.  The request was granted, and when the proceeding reconvened,
defense counsel decided against calling a rebuttal witness and stated
the defense was ready to proceed with argument.

DISCUSSION

I.  Scope of Record

At the post-trial proceeding, Defendant argued the
declaration and post-trial testimony of Special Agent Sweeney should
not be considered because both contained evidence not in the record at
the time ruling was reserved on his Rule 29 motion for judgment of
acquittal.  The government countered that the declaration and post-
trial testimony should be considered because Defendant also had a
pending pretrial motion to dismiss that was not similarly limited to
the evidence in the record at the time ruling was reserved on the
Rule 29 motion.  In addition, the government argued the evidence
should be considered because it was relevant to the determination of
whether further impairment existed and that such evidence was not
adduced at trial because the government was concerned about potential
prejudice to Defendant.

The procedural history in this case guides the determination
whether the record includes the declaration and post-trial testimony.
Defendant filed a motion to dismiss on multiplicity grounds prior to
trial, but ruling on the motion was deferred.  (Order, Feb. 2, 2006.)

In addition, Defendant filed a motion in limine to prevent evidence of the administration and results of his polygraph examination from being presented to the jury at trial. (Def's Mot. In Limine at 2-5.)  The government responded in its trial brief that it "[did] not intend to offer into evidence the fact that a polygraph examination was administered to Defendant Hamid Hayat on June 4, 2005, or the results thereof, during the direct examination of Special Agent Sweeney . . . .  Given this, it may become necessary to introduce separate evidence related to the duties and functions of the polygrapher and the question of whether [D]efendant's June 4 statements caused additional impairment to the FBI function's [sic] outside the presence of the jury before the Court can ultimately make a ruling on the factual and legal issues pertaining to [D]efendant's claim of multiplicity."  (Gov't Trial Brief at 54-55.)  No polygraph evidence was presented at trial; at the close of the government's case-in-chief, Defendant moved under Rule 29 for a judgment of acquittal on multiplicity grounds.

        Post trial evidence is admissible on Defendant's pending motion to dismiss since the motion is intertwined with the government's argument that the later false statements further impaired the FBI's operations.  See generally, Hubbell, 177 F.3d at 14 (stating "multiplicity claims are better sorted out post-trial [because] . . . . [t]he factual issues as to . . . whether the later acts or statements further impaired the operations of government, need development at trial" (citing Salas-Camacho, 859 F.2d at 791)); United States v. Marcello, 537 F. Supp. 1364, 1368-69 (E.D. La. 1982) (providing a defendant with the opportunity to present post-trial evidence on a pretrial motion to dismiss on which ruling was deferred

until after trial).  Further, although a Rule 29 motion for a judgment
of acquittal does not ordinarily allow for consideration of post-trial
evidence, the unique procedural history of this case reveals Defendant
was on notice that the government intended to present evidence on his
multiplicity challenge outside the presence of the jury.  Therefore,
the post-trial evidence will be considered in connection with both the
motion to dismiss and the Rule 29 motion for judgment of acquittal.

II.  Multiplicity Challenge

Defendant argues Counts Two, Three, and Four are
multiplicitous because the counts do not involve separate and distinct
false statements, but rather repeated iterations of his assertion that
he never attended a jihadist camp.  The government contends the three
counts involve separate "non-identical" false statements because each
count requires proof of a fact which the other does not.  The
government further argues that even if the three counts are considered
identical, Defendant is not entitled to a judgment of acquittal
because the later false statements "further impaired" an FBI
investigation.

"Multiplicity is the charging of a single offense in more
than one count."  United States v. Segal, 833 F.2d 144, 146 (9th Cir.
1987) (internal citation and quotation omitted).  "The test for
determining if multiple counts charge separate and distinct offenses
is whether one count requires proof of a fact which the other does not
. . . .  [W]here identical false statements . . . are made in response
to identical questions, the declarant may be convicted only once . . .
[unless] the later false statements further impaired the operations of
the government . . . ."  United States v. Rosen, 365 F. Supp. 2d 1126,
1136-37 (C.D. Cal. 2005) (internal citations and quotations omitted);

see also <u>United States v. Stewart</u>, 420 F.3d 1007, 1012-13 (9th Cir. 2005).   Thus, identical false statements can serve as the basis for multiple convictions if each later false statement caused "further impairment to the operations of the government" under the circumstances in which it was made.   <u>Salas-Camacho</u>, 859 F.2d at 791.

The circumstances surrounding the false statements in <u>Salas-Camacho</u> are analogous to the circumstances involved with the false statement charged in Count Two compared to the subsequent false statements charged in Counts Three and Four.   In <u>Salas-Camacho</u>, the defendant was convicted on two false statement counts, one for falsely denying to a customs inspector that he had goods to declare, and the second for making the same false denial to a different customs inspector.   859 F.2d at 790.   The Ninth Circuit affirmed the conviction on each false statement count because the second denial "further impair[ed] the operations of the government, that is, the orderly, efficient, and accurate processing of customs duties of the United States."   <u>Id.</u> at 791.   The Ninth Circuit explained that the "additional impairment [was] evidenced by the fact that the [defendant] made the second false statement . . . to a separate official (the secondary inspector) with different duties."   <u>Id.</u>   The Ninth Circuit found that the secondary inspector had different duties because he "conduct[ed] a more searching examination, including . . . a computer search . . . ."   <u>Id.</u>

In the instant case, Count Two charged Defendant with making a false statement to Special Agent Aguilar on June 3, 2005, while Counts Three and Four charged Defendant with making false statements to Special Agent Sweeney on June 4, 2005.   Special Agent Aguilar's testimony reveals he interviewed Defendant in order to learn

information about his activities while living overseas, particularly
in Pakistan, while Special Agent Sweeney's testimony reveals he
interviewed Defendant during a polygraph examination to assess
Defendant's veracity as to whether he was involved in jihad, and if
so, the extent of that involvement.  Unlike a standard interview, the
polygraph examination enabled Special Agent Sweeney to detect
indications of deception when Defendant denied receiving jihadist
weapons training and denied receiving training to fight against the
United States.  Therefore, like the agents in <u>Salas-Camacho</u>, Special
Agents Aguilar and Sweeney performed different duties because Special
Agent Sweeney conducted a "more searching examination" that assessed
Defendant's veracity and investigated whether Defendant had received
specific types of training and the target of such training.  <u>See</u> <u>id.</u>
Accordingly, Count Two is not multiplicitous of Counts Three and Four
because the later false statements to Special Agent Sweeney
"constituted an additional impairment of [his investigative]
functions."  <u>Id.</u>

      However, the rationale of <u>Salas-Camancho</u> is inapplicable to
the inquiry whether the false statement charged in Count Four caused
further impairment after the statement charged in Count Three because
both statements were made to Special Agent Sweeney during the course
of the polygraph examination.  <u>See</u> <u>id.</u>  But the Ninth Circuit's
decision in <u>Stewart</u> provides some guidance as to when false statements
to the same FBI agent can further impair governmental functions.  The
defendant in <u>Stewart</u> offered an informant weapons and monetary
compensation if he arranged for the murder of a federal judge.  420
F.3d at 1011.  The informant secretly recorded a conversation with the
defendant in which the defendant described the details of the plan and

the federal judge who was the target of the attack.  Id.  The
informant "immediately delivered the recording" to the FBI.  Id.  The
same FBI agent interviewed the defendant on two separate occasions
about the plan and asked "whether he said anything that could even be
misinterpreted as a threat to a judge"; the defendant denied saying
anything during both interviews.  Id.  The defendant was subsequently
convicted on two false statement charges, one for each of his false
statements to the FBI agent.  Id. at 1012.

The Ninth Circuit reversed the second conviction, holding
that the later false statement did not further impair the operations
of the government.  Id.  The Ninth Circuit found no additional
impairment existed because "after the first interview, the government
'had every man on alert' in an attempt to thwart any attempt to harm
[the federal judge]," and "at the time of . . . [the] second
[interview], the FBI already had the information leading to [certain
specified] areas of investigation."  Id.  The Ninth Circuit's analysis
suggests that the later false statement would have caused further
impairment if the FBI had not known the information necessary to
identify the target of the attack and mitigate the risk of harm.

Applying the guidance of Stewart to the false statements
charged in Counts Three and Four reveals that the later false
statement "constituted an additional impairment of [Special Agent
Sweeney's] governmental functions."  Salas-Camacho, 859 F.2d at 791.
Special Agent Sweeney testified that during the polygraph examination
he saw indications of deception when Defendant denied receiving
jihadist weapons training.  Special Agent Sweeney testified that once
the FBI learns of a potential terrorist threat, it immediately
attempts to discern the scope of the threat, identify the individuals

involved, and if possible, stop the threat before it reaches fruition. The FBI also attempts to learn the target of the threat since a domestic threat jeopardizes the safety of United States residents. Thus, when Special Agent Sweeney saw indications of deception as Defendant gave his first false denial, further inquiry by Special Agent Sweeney constituted a further investigation of the nature, scope and target of a potential terrorist threat, which was an inquiry related to the FBI's investigative and protective functions. When Defendant gave his later false denial as charged in Count Four, he impaired the ability of the FBI to specifically identify a potential terrorist threat and to assess whether protective measures could mitigate the risk of harm posed by that domestic threat. Consequently, Count Three is not multiplicitous of Count Four because Defendant's deception as to the target of his training impaired the ability of the FBI to effectively perform its investigative and protective functions.

<u>CONCLUSION</u>

For the stated reasons, Defendant's convictions on Counts Two, Three, and Four are not multiplicitous. Therefore, Defendant's motion to dismiss and motion for judgment of acquittal are denied.

IT IS SO ORDERED.

Dated:  June 19, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge