DENNIS P. RIORDAN (SBN 69320)
dennis@riordan-horgan.com
DONALD M. HORGAN (SBN 121547)
don@riordan-horgan.com
LAYLI SHIRANI (SBN 257022)
lshirani@gmail.com
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

MARTHA BOERSCH (SBN 126569)
BOERSCH SHAPIRO LLP
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 217-3700
Mboersch@boerschshapiro.com

TED SAMPSELL-JONES (MN SBN 034302X)
William Mitchell College of Law
875 Summit Avenue
St. Paul, MN 55105
Telephone: (651) 290-6348
ted.sampselljones@wmitchell.edu

Attorneys for Defendant
HAMID HAYAT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>HAMID HAYAT,<br><br>            Defendant.<br>_____ | No. CR S-05-0240 GEB<br>No. CV 14-01073-GEB<br>**DEFENDANT'S STATUS CONFERENCE MEMORANDUM AND REQUEST FOR SETTING OF AN EVIDENTIARY HEARING**<br><br>Date: January 13, 2017<br>Time: 10 AM<br>Dept.: Before the Hon. Deborah Barnes |

Petitioner Hamid Hayat submits this memorandum in advance of the status conference to be held in this matter this week and in support of his request to set a date for an evidentiary hearing.

//

//

**Defendant's Status Conference Memorandum**         1

## STATEMENT OF THE CASE

On June 16, 2005, the government filed an indictment against defendant Hamid Hayat charging him with two counts of violating 18 U.S.C. § 1001 for allegedly making false statements to FBI officials.

On January 26, 2006, the government filed a second superseding indictment against Hamid Hayat charging him with one count of violating 18 U.S.C. § 2339A (lending material support to international terrorism) and three counts of violating 18 U.S.C. §1001.  Count One alleged that Hamid, a United States citizen and resident of Lodi, California, received "jihadist training" at a camp in Pakistan sometime between October 2003 and November 2004, and intended "to return to the United States and, upon receipt of orders from other individuals, to wage violent jihad against persons and real property within the United States." Counts Two through Four alleged that Hamid willfully made false material statements to FBI agents investigating terrorism when he stated that he had never attended a jihadist camp (Count Two); that he had never received weapons or other types of jihadist training (Count Three); and that he never received training to fight against the United States (Count Four).

On April 25, 2006, following a joint trial of Hamid and Umer Hayat, after a period of some ten days, and after initially declaring a deadlock on the charges against Hamid, Hamid's jury returned guilty verdicts against him on all of the charged counts.  See Dkt. Nos. 311, 312, 313, 315, 318, 319, 320, 321, 324, 328 (reflecting minute orders for proceedings beginning April 14, 2006 and concluding April 25, 2006).  A separate jury could not reach a verdict against Umer on the false statement charges against him.  The court thereafter denied Hamid's motion for a new trial.  On September 11, 2007, the district court sentenced Hamid to a term of 288 months in prison.  Hamid timely filed a notice of appeal on September 17, 2007.

After judgment but before filing a notice of appeal, Hamid had filed a motion to vacate his convictions under 28 U.S.C. section 2255 on the ground that his trial counsel, Wazhma Mojaddidi, had operated under a conflict of interest by subordinating all decision-making in the case to Johnny Griffin, counsel for codefendant Umer Hayat. Hamid also claimed that in multiple respects Ms. Mojaddidi had been constitutionally deficient in her representation of him. On

**Defendant's Status Conference Memorandum**      2

November 7, 2007, the district court dismissed the section 2255 motion without prejudice because Hamid's criminal appeal was then pending in the Ninth Circuit.

Oral argument on appeal was held before a three judge panel of the Ninth Circuit on June 10, 2009.  Nearly four years later, on March 13, 2013, a divided panel of the Circuit finally issued its opinion affirming Hamid's convictions. *United States v. Hayat,* 710 F.3d 875 (9th Cir. 2013) The majority found that several other of Hamid's claims of trial error had not been properly preserved by his trial counsel, and indicated that trial counsel "may well have been deficient" in that regard.  *Id*. at 895, fn. 15.

While declining to review on direct appeal the district court's refusal to hear Hamid's claim of a deprivation of his right to counsel, the majority anticipated the filing in the district court of his renewed motion to vacate his convictions.  "This holding is, of course, without prejudice to our authority to review the district court's determinations on any later, properly filed initial § 2255 motion encompassing the claims Hayat sought to raise in the motion dismissed without prejudice, and expresses no view as to the merits of any of those contentions." *Hayat*, 710 F.3d at 903.

Following extensive investigation of the facts of the case in Pakistan, Hamid filed his renewed motion to vacate pursuant to § 2255 on April 30, 2014. (Dkt. 531.) The renewed 2255 alleged that Ms. Mojaddidi had labored under an actual conflict of interest and had deprived Hamid of his right to effective assistance of counsel by, *inter alia*, failing to investigate and present evidence from the alibi witnesses; failing to move to exclude and to adequately cross-examine the government's expert witnesses; failing to develop and present expert testimony from defense experts; as a result of refusing to obtain a needed security clearance, failing to present critical exculpatory testimony during cross-examination of the government's principal fact witness; and failing to object to misconduct during closing argument by the government. The renewed motion also alleged that the government had failed to disclose exculpatory evidence to Hamid, in violation of his right to due process as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963).

On June 6, 2014, Magistrate Judge Kellison issued an order requiring the government to

**Defendant's Status Conference Memorandum**          3

respond to the renewed 2255 motion. On November 13, 2014 after the parties conducted the deposition of trial counsel, Hamid filed his motion for summary judgment. The motion was argued before the magistrate judge on April 22, 2015. (Dkt. 569.) Judge Kellison issued his Findings and Recommendation (hereafter "MJR") recommending denial of the summary judgment motion on March 10, 2016. (Dkt. 588.) Petitioner filed his objections to the MJR on April 29, 2016. Following the filing of a response by the government, Judge Burrell issued an order denying summary judgment (hereafter "DCO") November 10, 2016. (Dkt. 600.) On December 9, 2016, this Court issued an order setting the matter for a status conference on January 13, 2017. (Dkt. 602)

## THE SUMMARY JUDGMENT REPORT AND ORDER

In his motion for summary judgment, petitioner Hayat made clear that he was not seeking decision on all of his claims for relief, specifically excluding his *Brady* claims, and further stated that there remained facts in dispute as to his Sixth Amendment claims as well. (Dkt. 548, Plt's Sum. Judg. Mot., at 3: "[T]he facts underlying the *Brady* claims have not yet been litigated, and for that reason Hamid does not seek summary judgment on that basis. Nor is every factual allegation concerning Hamid's Sixth Amendment claims presently undisputed.") He maintained, however, that the facts as to which there was no dispute between the parties were sufficient "to grant relief on his deprivation of counsel claims" at the present stage of the proceedings. (*Id.*)

In his order of March 10, 2016, Judge Kellison acknowledged that Hayat had "filed the pending motion for summary judgment as to his [sic *some* of his ineffective assistance of counsel claims." (MJR at 2; emphasis added.) He further noted: "For the purposes of [a motion for summary judgment], the Court construes all the facts in light most favorable to the . . . non-moving party." (*Id*. at 3, citing *E.E.O.C. v. Califonria [sic] Micro Devices Corp.*, 869 F. Supp. 767, 770.)

While recommending denial of the summary judgment motion, the MJR repeatedly stated that the recommendation was based only on the issue of whether the record evidence, and specifically the deposition testimony of petitioner's trial counsel, was sufficient to support summary judgment, evidence which, as the court had noted, had to be evaluated in the light most

favorable to the government. (See, e.g. MJR at 6: "Based on trial counsel's testimony at her deposition, the undersigned finds movant fails to provide sufficient support for his contention on motion for summary judgment that there was an actual conflict of interest with his trial counsel;" *id*. at 8: "[T]here is insufficient evidence before the court to grant a motion for summary judgment on the basis that trial counsel's decision to rely on the government's lack of evidence rather than attempting an alibi defense was so deficient as to render her representation ineffective;" *id.* at 9: as to failure to produce exculpatory testimony on non-functioning of any camp at Balakot, "[t]rial counsel's failure to produce such evidence at trial does not necessarily render her performance inadequate such that it provides a basis for granting summary judgment;" *id.* at 11: as to trial errors, "on the evidence before the court, movant has not met his burden to show ineffectiveness and/or prejudice by trial counsel's performance on summary judgment;" *id.* at 11: "Movant has the ultimate burden to prove his case. Based on the evidence currently before the court, the undersigned does not find sufficient support to grant the motion for summary judgment;" and *id*.: "[T]he question on review has to be whether the avenue taken and the effort put forth in movant's defense was so inadequate as to fall outside the wide range of competent assistance. Based on the evidence currently before the court, the undersigned does not find sufficient support for such a finding on a motion for summary judgment.")

Judge Burrell adopted the MJR "except for the portion that is rejected or modified below." (DCO at 2.) Like the MJR, however, the DOC took pains to make clear that the denial of the summary judgment motion did not address the ultimate merits of petitioner's claims, but rather was made solely under the standard for summary judgment relief. (*See, e.g.* DOC at 7: " Hayat has not satisfied his burden under the summary judgment standard of showing that Ms. Mojaddidi's representation of him was ineffective due to a conflict of interest;" *id.* at 19: as to Mojaddidi's failure to investigate and present the testimony of alibi witnesses, "the summary judgment record does not justify finding prejudice under *Strickland*.")

**PETITIONER'S ENTITLEMENT TO AN EVIDENTIARY HEARING**

When, as the DCO has ruled here, a habeas corpus petition cannot be resolved as a matter of law on undisputed facts, the petitioner is entitled to an evidentiary hearing to present evidence

to support his allegations. As the Supreme Court stated decades ago in *Walker v. Johnston,* 312 U.S. 275, 286-87 (1941): "It is true that [petitioner's allegations] are denied in the affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way." *See also Wright v. Dickson,* 336 F.2d 878, 882 (9th Cir. 1964) ("Issues of fact presented in habeas corpus proceedings may not be established by ex parte affidavits."); *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (noting that disputed issues of fact in coram nobis case typically require evidentiary hearing to resolve).

A petitioner is entitled to such a hearing " '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) ("[A]n evidentiary hearing [is required] where the [§ 2255] movant has made specific factual allegations that, if true, state a claim on which relief could be granted.") (internal quotation marks and citation omitted); *cf. United States v. Taylor*, 648 F.2d 565, 573, n.25 (9th Cir. 1981) ("Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions.") (citation omitted).  The Ninth Circuit has repeatedly referenced the controlling standards for the conducting of an evidentiary hearing with adjectives such as "low" (*United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011)) and "fairly lenient" (*United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003)). *See also United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) ("A claim [under section 2255] must be 'so palpably incredible or patently frivolous as to warrant summary dismissal' in order to justify the refusal of an evidentiary hearing.")

**1.     Petitioner's Witnesses**

Plainly, an evidentiary hearing is now required as to those witnesses who tendered declarations in support of petitioner's claims, but whose testimony could not be meaningfully considered on summary judgment to the extent that it was disputed by Ms. Mojaddidi in her deposition. For example, such a hearing is needed to determine the relevant facts as to petitioner's Sixth Amendment claims of conflict of interest and ineffective assistance of counsel. As demonstrated above, summary judgment was denied on those claims because both the

**Defendant's Status Conference Memorandum**       6

magistrate judge and district court, as they were required to do, accepted as credible Ms. Mojaddidi's deposition testimony concerning her decision-making in representing petitioner. In seeking summary judgment, however, petitioner made clear that he had submitted extensive evidence demonstrating the inaccuracy of trial counsel's contentions, viz.:

> Seven years ago, when Hamid filed his first section 2255 motion in this case which was denied without prejudice, he supported it with evidence that Ms. Mojaddidi admitted to Hamid's present counsel that she deferred to Mr. Griffin's decisions as to how she should represent Hamid both because of her own lack of knowledge and experience and because she could not risk the loss of Mr. Griffin's assistance by refusing his directions. (*See* Ex. A and B, the declarations of Dennis P. Riordan). In her recent deposition, however, while she acknowledged Mr. Griffin was a participant in almost every critical decision bearing on Hamid's defense, Ms. Mojaddidi claimed that all of those decisions nonetheless reflected her own independent strategic and tactical thinking.
>
> While Hamid's counsel believe that Ms. Mojaddidi's earlier description of how decisions were made in this case is the more honest and accurate one, in seeking summary judgment they need not challenge her more recent version of her state of mind during trial. However sincere Ms. Mojaddidi may be in her subjective belief that she acted independently in determining Hamid's tactical and strategic interests, her inexperience and ignorance of the law left her incapable of making rational tactical and strategic decisions independent of Mr. Griffin's control.

(See Dkt. 548 at 20.)

In addition to Ms Mojaddidi's admissions in 2006 and 2007 to her conflicted and ineffective representation, petitioner has submitted evidence from an attorney and an investigator who witnessed, and can testify to, Ms. Mojaddidi's preparation for and performance at petitioner's trial, as well as from numerous expert witnesses on the subject of ineffective assistance of counsel.

Likewise, this Court will need to hear and weigh the credibility of the alibi witnesses from Pakistan who submitted sworn declarations supporting petitioner's contention that his confession that he attended a jihadi training camp for many months was false. According to the government's own summary of statements during his interrogation, after denying in multiple interviews that he had attended such a camp, Hamid "then admitted that he had attended a jihadi training camp in 2003 in the vicinity of Balakot for three months and related various details

**Defendant's Status Conference Memorandum**     7

thereof." (Govt. Brief on Appeal at 6-7, citing Reporter's Transcript at 501-503; *see also id.* at 7: stating that petitioner stated he had traveled from Rawalpindi to Balakot and attended a camp there for three and a half months, but later stated the period was six months.)  If their live testimony is deemed credible by the court, the alibi witnesses will firmly establish that between October of 2003 and November of 2004, Hamid was never out of the sight of his friends and relatives in Rawalpindi and Beboodi for any significant amount of time, much less the three to six months period to which he "confessed' being at a training camp in Balakot.[1]

It is certainly likely that the government will not dispute every averment made by a witness who has submitted a declaration in support of petitioner's 2255 motion, and well may not wish to dispute any of the allegations of some of those declarations, instead agreeing to the introduction of those declarations and challenging their relevance or sufficiency as a grounds for relief.  Petitioner and his counsel stand ready to meet and confer with the government in an effort to narrow the scope of the hearing testimony from this category of petitioner's witnesses.

## 2. Adverse Witnesses as to Petitioner's *Brady* Claim

At trial, it was established that one could drive by car from Islamabad, the city where the FBI maintained an office, to the Balakot site depicted in the aerial images described by Department of Defense surveillance expert Eric Benn, in about four and one half hours.  (RT 3585.)  Yet the government introduced no evidence at trial of the results of the on-the-ground search of the Balakot location.

The Defense Department was in possession of hundreds, if not thousands, of additional images of the Balakot area taken in the many weeks and months between 2001 and 2004.  If military training with weapons had been going on at the Balakot site during the time Hamid was

---

[1] The DOC notes that the proffered alibi evidence is not inconsistent with petitioner's statement during his interrogation that he attended a camp for "a few days." (DCO at 18.) The "few days" time period contained in Hamid's interrogation statements referred to his supposed attendance of a camp in the year 2000. *See Hayat*, 710 F.3d at 882–83 ("Hayat at first denied having attended a terrorist training camp, but during the second session admitted that he had attended a camp for a few days during an earlier stay in Pakistan in 2000.") Hamid was not charged with any illegal conduct in 2000. Neither the magistrate judge nor the district court addressed nor disputed the fact that the alibi testimony is utterly inconsistent with the government's claim that Hamid attended a camp near Balakot for three to six months in 2003.

**Defendant's Status Conference Memorandum**        8

allegedly there, that activity would surely have been detected by the ongoing aerial surveillance. Not only did Benn fail to produce those images, he was careful to state that his opinion that there might be a militant camp at the location was based solely on an examination of those four photographs (RT 3081), strongly supporting the exculpatory inference that Benn had access to, and had examined, other photographs that undermined rather than supported the opinion he proffered to the jury. But the government blocked any questions by the defense on the subjects of whether United States operatives had visited the site represented in Benn's aerial images and whether Benn himself had examined other images of the same site by invoking the Classified Information Protection Act ("CIPA") when the subjects were raised by Ms. Mojaddidi on the cross-examination of Benn.[2]

In his motion, petitioner maintained that the flimsy nature of the government's proof regarding the Balakot camp is explained by the fact that it had been closed by the Musharraf government before October of 2003.  That closure surely became known to the government during its investigation of this case, through its aerial surveillance of the Balakot area as well as the ready access it had to the camp location after Hamid's arrest in June, 2005.

Furthermore, the disclosure of various NSA documents by Edward Snowden ("the Snowden documents") beginning in June 2013 has revealed numerous programs through which the NSA engaged in warrantless foreign surveillance.  Many of these programs covered Pakistan during the time period at issue in this case.  The Snowden documents "reveal a more expansive effort to gather intelligence on Pakistan than U.S. officials have disclosed."  Greg Miller, Craig Whitlock, and Barton Gellman, *Top-Secret U.S. Intelligence Files Show New Levels of Distrust of Pakistan*, Washington Post, September 2, 2013.  "Multiple U.S. agencies exploited the massive American security presence in Afghanistan — including a string of CIA bases and National Security Agency listening posts along the border mainly focused on militants — for broader intelligence on Pakistan."  *Id.*  Because the government was taping conversations of

---

[2] Because of her "incredible" failure (to use Judge Burrell's description) to obtain a security clearance, Ms. Mojaddidi was forced to agree that she would forego any cross-examination to which the government objected on CIPA grounds. As noted, petitioner has raised a separate Sixth Amendment claim based on that failure.

**Defendant's Status Conference Memorandum**         9

petitioner with Nassem Khan, an FBI informant in the United States during the period Hamid was in Pakistan between 2003 and 2005, it is a virtual certainty that it surveilled his other calls during that time period. If so, that data will demonstrate that Hamid was never in or near Balakot.

Notwithstanding Ms. Mojaddidi's incompetence in failing to obtain a security clearance, CIPA cannot trump the government's obligation under *Brady* to disclose the exculpatory information. "CIPA does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013) ("While the government must safeguard classified information in the interest of national security, courts must not be remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence.") Petitioner is entitled to obtain evidence from the lead FBI agent and the prosecutors in this case to support his claim that the government suppressed exculpatory evidence on the closing of the Balakot camp and the location of petitioner's telephonic communications during the period between October of 2003 and November of 2004.

Petitioner will again request discovery on the *Brady* issues that the government has refused to provide on previous occasions . If the government provides that discovery voluntarily or under order from this Court, it is likely that the scope of testimony from adverse government witnesses can be limited at the hearing.

Dated: January 11, 2017          Respectfully submitted,

DENNIS P. RIORDAN
DONALD M. HORGAN
LAYLI SHIRANI
MARTHA BOERSCH
TED SAMPSELL-JONES


By /s/ Dennis P. Riordan
       Dennis P. Riordan

Attorneys for Defendant
HAMID HAYAT

**Defendant's Status Conference Memorandum**          10