1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No. 2:05-CR-0240 GEB DB

12                 Respondent,

13        v.

14   HAMID HAYAT,                            ORDER

15                 Petitioner.

16

17        Petitioner, defendant Hamid Hayat, is a federal inmate pursuing relief under 28 U.S.C. §

18   2255, asserting that he was denied effective assistance of counsel and that the government

19   violated Brady.[1] (ECF No. 531.) On June 7, 2017, the court granted petitioner's request for an

20   evidentiary hearing to address his ineffective assistance of counsel claims. (ECF No. 616.) That

21   hearing is scheduled to begin on October 23, 2017. (ECF No. 621.) Pending before the court is

22   petitioner's motion for an order authorizing discovery pursuant to Rule 6 of the Rules Governing

23   Section 2255 Proceedings. (ECF No. 619.) Petitioner seeks to propound five interrogatories on

24   the government for discovery to support his ineffective assistance of counsel and Brady claims.

25   (Id.) The government opposes the motion. (ECF No. 625.) Petitioner filed a reply in support of

26   the motion. (ECF No. 626.) The court held a hearing on July 28, 2017. (ECF No. 628.)

27   _____

     [1] Brady v. Maryland, 373 U.S. 83 (1963) (prosecution must turn over all potentially exculpatory
28   evidence to the defense).

                                                    1

For the reasons outlined below, the court grants the motion.  However, the court, in its discretion, has narrowed the scope of the discovery and refashioned two interrogatories into requests for production to streamline the process.

I.     **Background**

Petitioner moves for discovery to support his ineffective assistance of counsel and <u>Brady</u> claims.  Petitioner's ineffective assistance of counsel claims assert, among other things, that his trial counsel was ineffective in not procuring, or attempting to procure, a security clearance so that she could review potentially classified information.  (ECF No. 531.)  In the <u>Brady</u> claims, petitioner alleges that the government failed to disclose exculpatory evidence concerning the following: (1) satellite images of the Balakot terrorist training camp; (2) materials indicating whether government agents had visited the Balakot camp site in the course of their investigation; (3) petitioner's secretly recorded conversations besides those that the criminal informant recorded; and (4) records of electronic surveillance of petitioner while he was in Pakistan during the relevant period.  (<u>Id.</u>)

Petitioner seeks to propound five interrogatories on the government to support these claims.  At the hearing on this motion, petitioner's counsel acknowledged that if the government were to identify documents responsive to the interrogatories, then petitioner would request that the government produce those documents.  (ECF No. 628.)  The five interrogatories that petitioner seeks to propound are as follows:

> (1)     IDENTIFY all steps taken by THE GOVERNMENT during the investigation and prosecution of the HAYAT CRIMINAL CASE to determine whether BALAKOT was functioning as a jihadi training camp in 2003 and 2004, including efforts to physically travel to, and inspect, the BALAKOT site.
>
> (2)     IDENTIFY every photograph or image, by whatever device obtained or whatever means produced, and in the possession of THE GOVERNMENT, depicting BALAKOT during the period between October 1, 2003 and December 1, 2005.
>
> (3)     IDENTIFY each DOCUMENT in the possession of the government that refers to or discusses whether BALAKOT was functioning as a jihadi training camp in 2003 and 2004.
>
> (4)     IDENTIFY all statements of DEFENDANT, obtained by or in the possession of THE GOVERNMENT and memorialized in

2

any form, made by DEFENDANT while he was in Pakistan between April of 2003 and May of 2005.

(5)     Identify every instance in which the government surveilled, recorded, overheard, or examined, an electronic communication, be it by telephone, text, email, or in any other electronic form, made by DEFENDANT while he was in Pakistan between April of 2003 and May of 2005.

The government opposes the request on the grounds that: (1) petitioner does not make specific allegations that the sought-after discovery will uncover material facts demonstrating that he is entitled to habeas relief; (2) petitioner does not support the discovery requests with specific facts demonstrating that there is reason to believe that exculpatory evidence was actually withheld; (3) the specific discovery requests are overbroad and based upon speculation; and (4) even if the interrogatories were to be propounded, the government would be unable to provide substantive responses because the information would be classified.  (ECF No. 625.)

The court reviewed the extensive briefing and held a hearing (ECF No. 628) on the motion where the parties made extensive arguments in support of their positions.  As stated above, the motion is granted; however, the discovery requests are being altered in the court's discretion to narrowly tailor the demands and streamline the process.

## II.     **Legal Standard**

Rule 6 of the Rules Governing Section 2255 Proceedings states that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Federal Rules of Civil Procedure, or in accordance with the practices and principles of law." However, a "party requesting discovery must provide reasons for the request.  The request must also include any proposed interrogatories or requests for admission, and must specify any requested documents."  Rule 6 of the Rules Governing Section 2255 Proceedings.  Good cause for a discovery order exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).[2]

---

[2] Bracy involved a petition by a state prisoner brought under 28 U.S.C. § 2254.  It is relevant here because "section 2255 'was intended to mirror § 2254 in operative effect.'"  United States v.

3

In Bracy, 520 U.S. at 909, the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in Harris v. Nelson, 394 U.S. 286, 300 (1969), in which the Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." The Ninth Circuit, consistent with Bracy and Harris, has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim. See, e.g., Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005); Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997) ("the test results **may** establish the prejudice required to make out such a claim" (emphasis supplied)). However, "courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." Calderon v. U.S. Dist. Ct. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996).

III. **Legal Analysis**

   A.     **Good Cause for Discovery**

The court finds that petitioner has shown good cause for discovery, as three of the proposed requests, as adjusted per the court's instructions below, are accompanied by sufficient reasoning and specific allegations to show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. The following analysis concerns the specific discovery requested in interrogatories 1, 2, and 3, for which petitioner has provided good cause in support. For the reasons set forth in Section B below, interrogatories 4 and 5 lack good cause and are improper.

   1. **Interrogatory No. 1**

In proposed interrogatory 1, petitioner requests identification of all steps taken by the government to determine whether Balakot was a functioning terrorist training camp in 2003 and

Winkles, 795 F.3d 1134, 1141 (9th Cir. 2015) (quoting Jones v. Ryan, 733 F.3d 825, 830 n. 1 (9th Cir. 2013)). Where the language of the statutes is "functionally identical," the court in a section 2255 case may apply the reasoning of section 2254 cases. For example, the trigger date for the statutes of limitations for both section 2254 and 2255 is the date the conviction becomes final on appeal. Compare 28 U.S.C. § 2244(d) with 28 U.S.C. § 2255(f).

2004, including efforts to physically travel to, and inspect, the Balakot site. During cross examination of the government's Department of Defense analyst, Eric Benn, petitioner's counsel inquired whether anyone from the United States had visited the Balakot location depicted in the satellite imagery. (ECF No. 619-1 at 12.) The government objected to the question, stating, among other reasons, that the question may call for disclosure of classified information. (Id.) The court sustained the objection and petitioner's counsel abandoned the inquiry.

Petitioner has contended throughout these proceedings that he is innocent of the crime and that his counsel's failure to obtain a security clearance prejudiced his case through limiting counsel's cross examination. "[A] court's denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts." Toney v. Gammon, 79 F.3d 693, 700 (8th Cir. 1996) (quoted approvingly by the Ninth Circuit in Jones, 114 F.3d at 1009). To prove the adverse effect of counsel's failure to obtain a security clearance, the court believes that discovery of the government's on-the-ground efforts to investigate the Balakot camp is essential. See id. As the undersigned describes below, the government presented substantial evidence at trial to show that Balakot was a functioning training camp at the time. Without access to evidence concerning the extent of the government's investigation of Balakot, trial counsel lacked the information necessary to effectively cross-examine Benn. Both of petitioner's ineffective assistance of counsel claims concern trial counsel's failure to obtain a security clearance among the specific adverse effects on his defense. (ECF No. 531-1 at 34-79, 81-111.)

In order to prove the prejudice prong of the ineffective assistance of counsel claim, petitioner is entitled to inquire about the steps taken by the government to inspect the Balakot site to determine whether it was a functional training camp at the time that petitioner was in Pakistan.[3]

Furthermore, evidence derived from this interrogatory may bolster the "unreasonableness" prong of Strickland. Petitioner may show that trial counsel was unreasonable

_____

[3] See Strickland v. Washington, 466 U.S. 668 (9184) (To demonstrate ineffective assistance of counsel, a petitioner must show that (i) counsel's performance "fell below an objective standard of reasonableness," and (ii) the allegedly deficient performance prejudiced the defense).

in not pursuing a security clearance by demonstrating that the information necessary to effectively cross-examine Benn concerning the government's investigation of Balakot was unobtainable by other means (i.e., unavailable through standard discovery processes without a security clearance). Accordingly, the court finds good cause for petitioner to pursue this line of inquiry in discovery; however, the interrogatory will be narrowed in scope, as described below.

## 2. Interrogatory No. 2

In proposed interrogatory 2, petitioner requests that the government identify all photographs and images depicting the Balakot training camp during the period between October 2003 and December 2005.[4] (ECF No. 619-2 at 5.) As alluded to above, government expert witness Eric Benn, a senior imagery analyst from the Department of Defense, identified satellite photos of the area near Balakot, two taken in August 2004, and two in October 2001, and described details of the photos, including structures they contained. (ECF No. 619-1 at 11-12.) The government acknowledges that, in addition to the four photos presented at trial, Benn reviewed "hundreds of images of militant training camps in Pakistan, and that approximately dozens of those images were in Balakot[.]" (ECF No. 625 at 18.) Accordingly, it is not speculative to conclude that there are additional aerial images of the purported Balakot training camp in the government's possession, which were not disclosed during the trial or turned over to the defense team during the discovery period.

In a 2015 Freedom of Information Act (FOIA) request, petitioner's counsel obtained documents from the National Geospatial-Intelligence Agency (NGIA), which included aerial photographs of more than twenty Pakistani militant camps. (ECF No. 608-2.) Petitioner's counsel represents that these photographs are so accurate and precise that Defense Department analysts were able to detect the presence of tents, vehicles, and armed militants engaged in training activities. (ECF No. 619-1 at 15.) The four photographs of the Balakot training camp presented by Benn at trial did not include this level of detail.

////

---

[4] Petitioner's counsel at the hearing noted that the December 2005 date was an error, and that the request should only go through December 2004. (ECF No. 628.)

6

Petitioner's ineffective assistance of counsel claims assert that trial counsel was ineffective in not seeking a security clearance, as well as not procuring an expert on the Balakot training camp. These claims could be bolstered by the production of additional images of the Balakot camp, which, the government acknowledges do exist. Thus, this request is neither speculative, nor is it immaterial to the petition. In order to prove the prejudice prong of the ineffective assistance of counsel claim, petitioner is entitled to inquire about additional imagery of the Balakot training camp, which was available at the time of trial.

Furthermore, petitioner's <u>Brady</u> claims assert that the government withheld critical information at trial. It is not speculative to conclude that the government has additional images of the Balakot camp that were not produced at trial, as the government admitted as much in its briefing. Additionally, the NGIA documents indicate that there are much more detailed images of Pakistani training camps available from the relevant time period. None of this material was produced to the defense team at trial. In order to support the <u>Brady</u> claims, petitioner is entitled to inquire about government aerial surveillance of the Balakot site, which were not produced at trial. Accordingly, the court finds good cause for petitioner to pursue this line of inquiry in discovery; however, the interrogatory will be narrowed in scope and transformed into a request for production, as described below.

### 3. <u>Interrogatory No. 3</u>

In proposed interrogatory 3, petitioner requests identification of each document in the possession of the government that refers to or discusses whether Balakot was a functioning training camp in 2003 and 2004. (ECF No. 619-2 at 5.) This is requested in the same vein as proposed interrogatory number 1, and, as is the case with that request, number three also presents a valid line of inquiry to pursue in discovery in light of the claims made in the section 2255 petition.

The NGIA documents present evidence that there was some doubt among intelligence analysts that the camp described by petitioner in his statements to investigators was actually the Balakot training camp, and not another camp. (ECF No. 608-2 at 52.) This expression of doubt was never revealed to the defense during discovery. Furthermore, as noted above, the numerous

detailed aerial photographs of Pakistani militant camps were not disclosed to the defense team at trial. It is clear from the NGIA documentation that the government had additional materials at its disposal concerning militant training camps that was not disclosed to the defense. Furthermore, a note in a previously-classified memorandum concerning the trial states that defense attorneys were not cleared for classified information, so "it is expected that they will voluntarily waive their right to participate in discussion regarding" answers by prosecution witnesses that may relate to sensitive or classified information. (Id. at 51.)

To prove the adverse effect of counsel's failure to obtain a security clearance, discovery of the government's efforts to investigate the Balakot camp is essential. Both of petitioner's ineffective assistance of counsel claims concern trial counsel's failure to obtain a security clearance among the specific adverse effects on his defense. (ECF No. 531-1 at 34-79, 81-111.)

In order to prove the prejudice prong of the ineffective assistance of counsel claim, petitioner is entitled to inquire about evidence that refers to or discusses whether Balakot was a functioning militant training camp in 2003 and 2004. It is clear from the NGIA documents, that there was significant analysis of Pakistani training camps done by intelligence services at the time of trial and beforehand. These documents, as with the satellite imagery, were not produced to counsel before trial. Nor was defense counsel privy to any discussion pertaining to classified information because of the security clearance issue.

Accordingly, the court finds good cause for petitioner to pursue this line of inquiry in discovery; however, the interrogatory will be narrowed in scope and transformed into a request for production, as described below.

**B.     Fishing Expeditions**

The government primarily argues that petitioner's discovery requests are only supported by speculation and not specific factual allegations. The government repeatedly alludes to petitioner's discovery requests as a "fishing expedition." However, it is broadly recognized that "much of discovery is a fishing expedition of sorts," and the more-significant questions are for the court to determine "[t]he pond, the type of lure, and how long the parties can leave their lines in the water." Myers v. The Prudential Ins. Co., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008).

While the undersigned recognizes that this quoted language comes from a civil matter where the rules are much different, the general principle imparted by the <u>Myers</u> court still holds true: virtually all discovery involves at least some degree of fishing. If petitioner could already specifically identify the sought-after discovery in intricate detail, then there would be no need for him to make the requests.

In section 2255 proceedings, a petitioner may not use discovery to "investigate mere speculation." <u>Rich v. Calderon</u>, 187 F.3d 1064, 1067 (9th Cir. 1999). <u>See also</u> <u>Kemp v. Ryan</u>, 638 F.3d 1245, 1260 (9th Cir. 2011) ("Kemp's claim of a jail-wide policy of eliciting incriminating statements has many of the indicia of an improper 'fishing expedition,' and the desire to engage in such an expedition cannot supply 'good cause' sufficient to justify discovery."); <u>Rich</u>, 187 F.3d at 1067 (petitioners may not seek to use discovery "to explore their case in search of its existence") (quoting <u>Nicolaus</u>, 98 F.3d at 1106). Similarly, "good cause for discovery cannot arise from mere speculation" and "discovery cannot be ordered on the basis of pure hypothesis." <u>Arthur v. Allen</u>, 459 F.3d 1310, 1311 (11th Cir. 2006). Finally, the availability of relief under section 2255 does not properly offer a criminal defendant an "'opportunity' to reargue their entire case." <u>United States v. Schaflander</u>, 743 F.2d 714, 722 (9th Cir. 1984).

The government cites to the above cases, and others, arguing that petitioner's discovery requests are only supported by speculation and not specific factual allegations. As demonstrated above, however, petitioner's requests one through three are specific and supported by concrete allegations and facts. It is clear that additional aerial imagery of the Balakot camp -- a central location to the prosecution's case at trial -- exists and was not produced to petitioner. It is clear, also, that trial counsel's inquiry into whether investigators made on-the-ground inquiries into the nature of the Balakot site was cut off during cross examination, in part, because it may have implicated classified information. And finally, the NGIA documents reveal extensive analysis and imagery of numerous militant training camps in Pakistan, which creates a logical inference that similar analysis should be available concerning the Balakot location. Thus, the government's position that this is merely a "fishing expedition" is inaccurate; the requested lines of inquiry are essential to petitioner's claims and based upon specific facts.

In sum, the discovery sought here is not an attempt to reargue petitioner's case, nor is it an attempt "to explore [petitioner's] case in search of its existence." <u>Rich</u>, 187 F.3d at 1067. Rather, narrowly-tailored discovery is sought to bolster specific cognizable claims. And, as the court will address below in Section D, the proposed discovery requests will be further narrowed per the court's discretion to ensure an appropriate scope and efficient process.

### C.      Materiality

The government also argues that petitioner's requests for discovery related to the Balakot training camp are immaterial because the government was not required to prove that petitioner attended the Balakot training camp. (ECF No. 625 at 13, 16-17.) Specifically, the government claims that "the existence of other evidence about the operation or non-operation of the Balakot camp could not have affected the outcome at trial." (ECF No. 625 at 16.)

The government may be correct that it did not need to prove that petitioner specifically attended the Balakot training camp at trial. However, a case alleging a defendant lent material support to terrorism by attending a militant training camp requires the government to prove the defendant attended a training camp. Here, the government's case at trial was bolstered by evidence -- ranging from petitioner's own statements to the testimony of Benn -- that petitioner attended a militant training camp in the Balakot region. This evidence was presented to make the requisite showing that petitioner lent material support to terrorism through attending a training camp and then tried to cover that up with false statements to federal authorities. Ultimately, this makes the evidence that petitioner attended a training camp in the Balakot region material, if not essential, to the government's case at trial.

Evidence that a training camp did not exist in the Balakot region or had been closed before the relevant time period would undermine Benn's trial testimony, as well as impact the credibility of petitioner's own statements to investigators about attending a training camp. This would likely impact a wide range of government evidence presented at trial. Thus, contrary to the government's position, the presentation evidence that would undermine the prosecution's evidence at trial would be not only material, but seemingly essential to an effective defense and very well could have swayed the outcome of the trial. And so, if petitioner's counsel was

ineffective in not pursuing such evidence or not adequately cross examining witnesses concerning such evidence, then petitioner would ultimately be prejudiced by that representation. Accordingly, the court rejects the argument that the evidence sought would be immaterial to this action.

**D.      Scope of Discovery**

The government also objects to the specific interrogatories proposed by petitioner, arguing that they are overbroad, based upon speculation, and lack specificity.  (ECF No. 625 at 15-22.) "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." Bracy, 520 U.S. at 909.  For the following reasons, the court finds that: (1) proposed interrogatory 1 shall be narrowed in scope; (2) proposed interrogatories 2 and 3 shall be refashioned as requests for production and narrowed in scope; and (3) proposed interrogatories 4 and 5 shall be eliminated as impermissible.

**1.      Interrogatories 1, 2, and 3**

**a.      Narrowly Tailored**

The government argues that, in general, all of petitioner's proposed discovery requests are overbroad.  (ECF No. 625 at 19.)  The court agrees to a certain extent.  Specifically, the court finds that petitioner's definition of "the government" in the proposed interrogatories is too broad, insomuch as that definition includes every federal agency "that provided information for use in the investigation and/or prosecution of defendant[.]"  (ECF No. 619-2 at 2.)

To be sure, a great number of federal agencies and investigative bodies may have contributed information to the prosecution of petitioner, however, that does not necessarily mean that each and every one of these agencies -- of which, petitioner provides a non-exhaustive list of 24 such government bodies -- should be required to comb through files that are thirteen to fourteen years old and were not provided to the team of investigators and prosecutors working on the Hayat criminal case.[5]  Instead, it is proper for the pool of information searched to be limited to

---

[5]  The court notes that "Hayat criminal case" is defined in the definitions section of the proposed interrogatories as meaning "United States v. Hamid Hayat, No. CR S-05-0240-GEB and United States v. Hayat, 710 F.3d 875 (9th Cir. 2013)."  (ECF No. 619-2 at 2.)

11

the files in possession of the team that investigated and prosecuted petitioner, including documentation that the team received from the various sources listed by petitioner in the definitions section of the proposed interrogatories.  (See ECF No. 619-2 at 2.)

While petitioner has presented good cause for discovery of information that the investigators, prosecutors, and expert witnesses possessed and/or had at their disposal during the investigation and prosecution, specific facts have not been alleged to justify a requirement that at least 24 government agencies comb through intelligence files dating back more than a dozen years.  Certainly, if this initial discovery into the files of the team investigating and prosecuting petitioner reveals documents or information indicating the presence of exculpatory evidence in the possession of a specific agency or organization, then the court may consider an expansion of the request.  However, at this stage, there is not good cause to require nearly the entire federal intelligence and investigative communities to search through materials which were not part of the original investigation and prosecution.

For these reasons, the court narrows the scope of the requests to only encompass materials that investigators, prosecutors, and government expert witnesses had at their disposal during the "Hayat criminal case" as defined in petitioner's proposed interrogatories.  (See ECF No. 619-2 at 2.)  The court has authority to do so.  See Bracy, 520 U.S. at 909 ("the scope and extent of such discovery is a matter confided to the discretion of the District Court"); United States v. Naha, No. CR 99–206 PCT RCB (LOA), 2007 WL 91615, (D. Ariz. Jan. 11, 2007) (district court ordered discovery in a section 2255 case, and, in its discretion to manage the scope and extent of discovery, ordered the specific means by which the discovery was to be taken, the timing of all requests, and the specific issues that all discovery must address); Stone v. United States, Nos. 1:08–cr–00006–JAW, 1:11–cv–00007–JAW, 2011 WL 2194415 (D. Maine June 6, 2011) (granting motion for discovery in section 2255 case and refashioning requests for production into a deposition as a means of better protecting potentially privileged information).

Furthermore, the court restricts the time period of proposed interrogatory number 2, which, as discussed below, will now be a request for production, to December 1, 2004. Petitioner's counsel acknowledged at the hearing that the date of December 1, 2005 was an

oversight, and that it should have stated December 1, 2004. Accordingly, the time period shall be restricted to that date.

### b. **Requests for Production**

Inherent in the court's authority to set the scope and extent of discovery, is the ability to refashion the type of discovery requested to more-appropriately suit the circumstances. See e.g., Naha, 2007 WL 91615 (ordering that the granted discovery must be taken by deposition through written questions, including specific directions to the parties concerning the sequence and timing of all deposition questions); Stone, 2011 WL 2194415 (refashioning requests for production into a deposition as a means of better protecting potentially privileged information). Two of petitioner's three permissible discovery requests demand the government identify documents, photographs, and/or images. At the hearing on this motion, the court inquired with petitioner's counsel as to whether petitioner would later seek production of any documents that the government identified (if any) in response to the proposed interrogatories. Petitioner's counsel responded that he would seek production if documents were identified. (ECF No. 628.)

To streamline the discovery process, the court invokes its discretion concerning discovery in section 2255 proceedings and converts interrogatories 2 and 3 to requests for production. Because interrogatory number 1 does not seek the identification of any documents, that shall remain as an interrogatory. Documentation (if any exists) that would support an affirmative response to interrogatory number 1 would be encompassed by the other two discovery requests.

### c. **Permissible Discovery Requests**

In accordance with the reasoning above, the court finds that there is good cause to propound the following three discovery requests on the government:[6]

---

[6] Please note that petitioner shall accompany the approved discovery request with the same definition and instruction sections -- with the removal of the "government" definition as determined in the restrictions on scope above -- found in the proposed interrogatories attached to the motion. (ECF No. 619-2 at 2-5.)

Additionally, while the undersigned has determined that there is good cause for discovery requests to issue within the stated scope, the court is not preemptively ruling against any potential objections to the substance of the approved requests that the government may issue in response to the propounded discovery. At this stage, the court has not had a full hearing on such objections that the government may make in the future; rather, the court has merely determined that there is

13

Interrogatory 1: Identify all steps taken by the team investigating and prosecuting the Hayat criminal case to determine whether Balakot was functioning as a jihadi training camp in 2003 and 2004, including but not limited to, efforts to physically travel to, and inspect, the Balakot site.

Request for Production 1: Identify and produce every image, by whatever device obtained or whatever means produced, and in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat, depicting the Balakot training camp during the period between October 1, 2003 and December 1, 2004.

Request for Production 2: Identify and produce each document in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat that refers to or discusses whether Balakot was functioning as a jihadi training camp in 2003 and 2004.

## 2. **Interrogatories 4 and 5**

Proposed interrogatories 4 and 5 request that the government identify statements of petitioner obtained by the government when he was in Pakistan, as well as all intercepted communications of petitioner while he was in Pakistan from April 2003 through May 2005. (ECF No. 619-2 at 6.) The court concurs with the government's objections (ECF No. 625 at 20-22) to these interrogatories, and so, for the following reasons, petitioner is not authorized to propound these requests upon the government.

Even where a defendant has alleged that illegal surveillance exists, "[a] party's right to learn of illegal surveillance is not absolute." United States v. Waters, 627 F.3d 345, 364 (9th Cir. 2010). Where the demand for disclosure relies "only on generalized statements about government surveillance programs and include[s] no direct evidence that suggests that the defendant was subjected to warrantless wiretapping or other forms of illegal surveillance," the request for disclosure should be denied. Id. at 356; see also United States v. Tobias, 836 F.2d 449, 452-53 (9th Cir. 1988) ("[B]ecause responding to ill-founded claims of electronic

good cause for discovery within the stated scope.

surveillance would place an awesome burden on the government, a claim of government electronic surveillance of a party must be sufficiently concrete and specific" before the government is required to respond.).

Here, petitioner has not demonstrated good cause to believe that he was illegally surveilled or that his communications from Pakistan were intercepted. Petitioner presents "no direct evidence that suggests that [he] was subjected to warrantless wiretapping or other forms of illegal surveillance[.]" <u>Waters</u>, 627 F.3d at 364. The generalized statement that federal intelligence agencies engaged in potentially illegal overseas surveillance programs is insufficient to demonstrate that petitioner was personally targeted by these programs. The Ninth Circuit is clear in <u>Waters</u> that a party needs to present particularized evidence concerning his own case in order to establish grounds for discovery of this type. <u>Id.</u>

While petitioner points to an abandoned line of inquiry made by petitioner's trial counsel during her cross examination of an FBI agent as support for this type of discovery (ECF No. 619-1 at 13), this situation differs significantly from the objections that provide good cause for petitioner to pursue interrogatory number 1. In this instance, the court did not sustain an objection on classified information grounds, nor did petitioner's trial counsel withdraw the question based upon an objection that the inquiry implicated classified information. (<u>Id.</u>) Instead, when trial counsel asked the FBI agent about "other secretly recorded conversations" of petitioner while in Pakistan, an objection was sustained on Federal Rule of Evidence 403 grounds "because of the way [the questions was] worded." <u>Id.</u> The fact that trial counsel withdrew her next question (upon the government's objection) asking about other FBI investigations of which petitioner may have been the target also does not represent "direct evidence" that petitioner may have been the target of surveillance that intercepted additional communications from him during his time in Pakistan. <u>Id.</u>

For these reasons, petitioner has not demonstrated good cause to propound proposed interrogatories four and five.

////

////

### E.      Classified Information Procedures Act

Finally, the government argues that even if petitioner were entitled to discovery, any materials responsive to the requests may be classified.  While the Classified Information Procedures Act (CIPA) provides processes for the court and defense counsel to follow to obtain a security clearance and review classified information during a criminal trial, the government contends that no such procedures exist in the section 2255 context for habeas counsel to even apply for a security clearance.  (ECF No. 625 at 23-26.)  Thus, from the government's perspective, all discovery requests in this case are moot because they necessarily seek classified information that defense counsel will never be able to access.

However, the Supreme Court has stated that Rule 6(a) "is meant to be 'consistent'" with its holding in <u>Harris</u>, 394 U.S. 286, in which the Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, **it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry**." <u>Bracy</u>, 520 U.S. at 908-09 (1997) (quoting <u>Harris</u>, 394 U.S. at 300) (emphasis supplied).  Thus, this court is obligated to ensure that the discovery that has been granted is carried out effectively.  For this reason, the court rejects the government's refusal to provide petitioner's counsel with the opportunity to apply for a security clearance.  As outlined below, the court is not convinced by the government's unsupported contention that it is "impossible" to provide petitioner's counsel with access to the security clearance application process; history and the law show the opposite.

#### 1.      The Nature of 2255 Proceedings

The government argues in its opposition that section 2255 proceedings are civil in nature, and, therefore, CIPA is inapplicable.  (ECF No. 625 at 23.)  However, as stated in the Advisory Committee Notes on the Rules Governing Section 2255 Proceedings and in <u>United States v. Martin</u>, section 2255 proceedings differ from section 2254 by being an extension of the original criminal case.  Advisory Committee Notes to Rule 1 of Rules Governing Section 2255 Proceedings ("[A] motion under § 2255 is a further step in the movant's criminal case and not a separate civil action[.]"); <u>United States v. Martin</u>, 226 F.3d 1042, 1047 n. 7 (9th Cir. 2000) ("it is

now clear that a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action." (internal quotations omitted)).

The Advisory Committee Notes and <u>Martin</u> were both raised in petitioner's reply brief (ECF No. 626 at 10-12), and so the court provided the government with an opportunity to respond to these statements of law during the hearing. (ECF No. 628.) Counsel for the government asserted that the Advisory Committee Notes include the caveat that while section 2255 proceedings are characterized as an extension of the criminal case, this "does *not* mean that proceedings upon such a motion are of necessity governed by the legal principles which are applicable at a criminal trial regarding such matters as counsel, presence, confrontation, self-incrimination, and burden of proof." Advisory Committee Notes to Rule 1 of Rules Governing Section 2255 Proceedings (emphasis in original). The court accepts that the list is not meant to be exhaustive, but, finds that none of the exceptions concern access to classified or analogous information.

Accordingly, the law of this Circuit is clear: section 2255 proceedings are an extension of the criminal case, and, thus, are criminal in nature, rather than civil. For this reason, the government's argument that discovery cannot go forward because of the potential of classified information being implicated must be rejected. As the court found above, petitioner made specific allegations to show reason to believe that this potentially-classified information sought in discovery, if fully developed, would demonstrate that he is entitled to relief. <u>See</u> <u>Bracy</u>, 520 U.S. at 908-09.

## 2.   <u>Adequate Inquiry</u>

As stated above, this court is duty-bound to provide petitioner with the "'necessary facilities and procedures for an adequate inquiry.'" <u>Bracy</u>, 520 U.S. at 908-09. Without a security clearance to view the sought-after discovery, or, at the very least, the opportunity to obtain a security clearance through some reasonable process, petitioner cannot be assured of an "adequate inquiry" as is his right pursuant to the Supreme Court's holdings in <u>Bracy</u> and <u>Nelson</u>.

According to the correspondence between the government and petitioner's counsel attached to the motion, petitioner's counsel has on several occasions requested security clearances

to permit his and co-counsel's participation in hearings concerning classified information. (ECF No. 619-3.) Petitioner's current counsel first made this request on March 14, 2014. (Id. at 14.) The government either rejected or did not respond to each request for a security clearance. In the United States Attorney's Office's final correspondence with petitioner's counsel on June 28, 2017, the latest request for a clearance was again denied. (ECF No. 619-4.) The correspondence (ECF Nos. 619-3; 619-4), the government's argument in the opposition (ECF No. 625), and the government's stance during the hearing (ECF No. 628) all make clear that the government is steadfast in its refusal to even start the application process for petitioner's counsel to obtain a security clearance. At the hearing on this motion, the government's counsel explicitly stated that it was "impossible" for the government to provide a process by which counsel for a section 2255 petitioner could obtain a security clearance. Such a stance is unacceptable and contrary to the law.

This court is mandated to "arrange for procedures that will allow development . . . of the facts relevant to disposition of a habeas corpus petition." Harris, 394 U.S. at 298. In exercising this power to provide facilities and procedures that ensure an adequate inquiry, "the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the usages and principles of law." Id. at 300 (internal quotations omitted). The Harris Court also instructed that, in reviewing habeas cases, district courts should fashion appropriate modes of procedure analogous to existing rules and in conformity with judicial usage. See id.

Accordingly, the proper institution to whom this court should look to provide the information petitioner needs to develop his section 2255 petition is the Department of Justice. So, as found above, the interrogatory and requests for production have been directed to the Department of Justice, and now, also, this order is directed to the Department of Justice, requiring it to find a means by which petitioner's counsel may apply for a security clearance.

### a.    Security Clearance Process

"CIPA is procedural and neither creates nor limits a defendant's right of discovery." United States v. El-Mezain, 664 F.3d 467, 519-20 (5th Cir. 2011). CIPA provides a set of

processes for courts to follow in criminal matters that may implicate classified information. A defense counsel must obtain security clearance if he wishes to view classified CIPA materials. See 18 U.S.C. App. 3 Sec. 9; United States v. Abdi, 498 F. Supp. 2d 1048, 1087 (S.D. Ohio 2007); United States v. Al–Arian, 267 F. Supp. 2d 1258, 1266 (M.D. Fla. 2003); United States v. Bin Laden, 58 F. Supp. 2d 113, 118 (S.D.N.Y.1999). CIPA is to "apply in all criminal proceedings involving classified information, and appeals therefrom, before the United States district courts, the courts of appeal and the Supreme Court[.]" Security Procedures Established Pursuant to PL 96‑456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information.

However, the government is correct in pointing out that the procedures in CIPA contemplate only the discovery of classified information before trial.[7] Thus, procedurally, there is no federal statute or set of regulations outlining how classified information is to be discovered and presented during section 2255 proceedings.

The government's official stance has consistently maintained there is no process for petitioners' counsel to apply for a security clearance. This stance, however, is belied by cases the government, itself, cited in its opposition. (See ECF No. 625 at 25 n. 13.) Specifically, in In re Guantanamo Bay Detainee Litigation, 577 F. Supp. 2d 143 (D.D.C. 2008) (Guantanamo Litigation), the government voluntarily disclosed classified information to habeas counsel for law-of-war detainees at Guantanamo Bay who had not yet been convicted of a crime. The Guantanamo Litigation set out clear guidelines for habeas counsel to receive security clearances, which were a prerequisite to any potential information sharing (or even contact with the detainees themselves). Id. at 157. In particular, the protective order entered by the court instructed counsel "who do not currently possess a Secret clearance . . . to submit an application for clearance to the Department of Justice, Litigation Security Division." Id.

_____

[7]  The procedures outline how classified information that is subject to discovery before trial is to be handled at the later stages of the proceedings, such as during the trial and any appeal. However, concerning the issue of discovery itself, CIPA provides no guidance to courts addressing section 2255 proceedings, nor does it provide any guarantees that counsel for a petitioner may apply for, or be granted security clearance or seek the disclosure of classified information.

19

This case makes clear that outside the clearly-delineated lines established by CIPA for the sharing of classified information in criminal cases, the Department of Justice has flexibility to offer security clearances to counsel if it chooses.  Thus, government counsel's declaration of impossibility belies the reality that the government is simply **choosing** to not offer an opportunity for petitioner's counsel to obtain a security clearance.

Furthermore, while CIPA's text makes clear that its procedures apply to criminal trials, that does not forbid the government or this court from adopting CIPA's "familiar procedures" or the ad hoc procedures created voluntarily in the <u>Guantanamo Litigation</u>.  <u>See</u> <u>Harris</u>, 394 U.S. at 300 (In exercising the power to provide facilities and procedures that ensure an adequate inquiry, "the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the usages and principles of law.").

So, while government counsel is correct that there is nothing in the <u>Guantanamo Litigation</u> requiring the government to produce classified information to petitioner's counsel, there is no legal restriction on the accessibility of the application process for security clearances.  The <u>Guantanamo Litigation</u> explicitly concerned the "disclosure" of classified information to habeas counsel; specific guidelines were established for how the classified information in the case was required to flow between the principals in the case.  At the present stage, this court is not requiring the government to actually disclose any classified information to petitioner's counsel.  Rather, the court recognizes that there may be classified information responsive to the requests issued here,[8] and therefore, a process must be started, which will ensure petitioner access to an "adequate inquiry" pursuant to the discovery rules of section 2255 proceedings.

The first step is ensuring that all parties can begin the process with the end goal of obtaining a security clearance so there is a possibility they may review classified information that may be implicated in the discovery requests.  The security clearance application process may be long and there is no guarantee that any individual will be granted a clearance; therefore, it is

_____

[8]  The government, itself, recognizes that classified information is implicated in the discovery requests through its argument in the opposition and in the courtroom that any discovery would be moot because there is no process by which petitioner's counsel could access it.  (<u>See</u> ECF No. 625 at 23-26.)

appropriate that the government begin that application process immediately, so that this case can move along in a timely manner. For example, an evidentiary hearing has been scheduled for less than three months from now (October 23, 2017); in order to ensure timely justice and an adequate inquiry of discovery, it is imperative that the security clearance process for petitioner's counsel get underway.

Therefore, in anticipation of the propounded discovery implicating classified information, the court orders the government to establish a process by which petitioner's counsel may apply for a security clearance. While the court has broad discretion in fashioning procedures for discovery in section 2255 proceedings, it is not, at this time, mandating that the government follow a specific, established protocol for the security clearance application process. The government may adopt the processes it follows in CIPA matters for beginning the application process or it may follow the ad hoc approach established in the Guantanamo Litigation. Whichever method is chosen, however, must begin within fourteen days of this order.

**IV.  Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that:

(1)  Petitioner's motion for an order authorizing discovery (ECF No. 619) is granted in part and denied in part;

(2)  Petitioner shall propound the approved discovery requests upon the government within seven days of the date this order; and

(3)  The government shall provide petitioner's counsel with a means to apply for a security clearance as outlined above within fourteen days of the date of this order.

Dated:  August 11, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

TIM - DLB:10
ORDERS / ORDERS.PRISONER.HABEAS / haya0240.disc.v4

21