1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                No.  2:05-cr-0240 GEB DB

12              Respondent,

13        v.

14   HAMID HAYAT,                             <u>ORDER</u>

15              Petitioner.

16

17        Petitioner, defendant Hamid Hayat, is a federal inmate pursuing relief under 28 U.S.C. §

18   2255, asserting that he was denied effective assistance of counsel and that the government

19   violated <u>Brady</u>.[1]  (ECF No. 531.)  On June 7, 2017, the court granted petitioner's request for an

20   evidentiary hearing to address his ineffective assistance of counsel claims.  (ECF No. 616.)  That

21   hearing is scheduled to begin on October 23, 2017.  (ECF No. 621.)  On August 14, 2017, the

22   court granted petitioner's motion for an order authorizing discovery.  (ECF No. 630.)  The court

23   ordered petitioner to propound the approved discovery requests within seven days, and ordered

24   the government to provide petitioner's counsel with a means to apply for a security clearance

25   within fourteen days.  (<u>Id.</u>)

26   ////

27
     _____
28   [1]  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (prosecution must turn over all potentially exculpatory
     evidence to the defense).

1

Pending before the court is the government's amended motion for reconsideration and motion to stay the August 14, 2017 order authorizing discovery. (ECF No. 633.) In support of the motion for reconsideration, the government presented the undersigned with a sealed, ex parte submission containing classified information. (ECF No. 634.[2]) Petitioner filed an opposition. (ECF No. 635.) Based upon the presentation of new facts that were not known to the court at the time of the original order, the undersigned grants the motion for reconsideration. Upon reconsideration, the court affirms its prior order, though upon somewhat different grounds based on the new evidence presented.

**BACKGROUND**

Petitioner moved for discovery to support his ineffective assistance of counsel and <u>Brady</u> claims. Petitioner's ineffective assistance of counsel claims assert, among other things, that his trial counsel, Wazhma Mojaddidi, was ineffective in not procuring, or attempting to procure, a security clearance so that she could review potentially classified information. (ECF No. 531.) In the <u>Brady</u> claims, petitioner alleges that the government failed to disclose exculpatory evidence concerning the following: (1) satellite images of the Balakot terrorist training camp; (2) materials indicating whether government agents had visited the Balakot camp site in the course of their investigation; (3) petitioner's secretly recorded conversations besides those that the criminal informant recorded; and (4) records of electronic surveillance of petitioner while he was in Pakistan during the relevant period. (<u>Id.</u>)

Petitioner sought to propound five interrogatories on the government to support these claims. The government opposed the request on the grounds that: (1) petitioner did not make specific allegations that the sought-after discovery will uncover material facts demonstrating that he is entitled to habeas relief; (2) petitioner did not support the discovery requests with specific facts demonstrating that there is reason to believe that exculpatory evidence was actually withheld; (3)

---

[2] ECF No. 634 is a notice that sealed, classified information was submitted to the court on an ex parte basis; it is not the information itself, which, due to national security protocols, cannot be submitted on the record in this case, even under seal. The undersigned was required to obtain a security clearance via the court's Classified Information Security Officer, after which, the undersigned was presented with classified information for in camera review that had previously been presented to the trial court judge, Senior United States District Judge Garland E. Burrell.

the specific discovery requests were overbroad and based upon speculation; and (4) even if the interrogatories were to be propounded, the government would be unable to provide substantive responses because the information would be classified. (ECF No. 625.)

The court reviewed the extensive briefing and held a hearing (ECF No. 628) on the motion. Based upon the briefing and the hearing, the court found petitioner established good cause for discovery and ordered the following discovery requests to be propounded on the government:

> Interrogatory 1: Identify all steps taken by the team investigating and prosecuting the Hayat criminal case to determine whether Balakot was functioning as a jihadi training camp in 2003 and 2004, including but not limited to, efforts to physically travel to, and inspect, the Balakot site.
>
> Request for Production 1: Identify and produce every image, by whatever device obtained or whatever means produced, and in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat, depicting the Balakot training camp during the period between October 1, 2003 and December 1, 2004.
>
> Request for Production 2: Identify and produce each document in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat that refers to or discusses whether Balakot was functioning as a jihadi training camp in 2003 and 2004.

Additionally, the court ordered the government to provide petitioner's counsel with access to a means of applying for a security clearance. This was done to assure an "adequate inquiry" pursuant to the Supreme Court's holdings in Bracy and Harris. [3] (ECF No. 630 ("discovery order").)

On August 29, 2017, the government moved for reconsideration. (ECF No. 633.) The government argues reconsideration is appropriate based on the presentation of new facts. Those new facts involve pretrial proceedings on the necessity of providing classified information to the defense under § 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3. The government argues that because the undersigned did not have the appropriate security clearance

---

[3] In Bracy v. Gramley, 520 U.S. 899, 908-09 (1997), the Supreme Court held that Rule 6 of the Rules Governing 2255 Procedures was meant to be applied consistently with its prior opinion in Harris v. Nelson, 394 U.S. 286, 300 (1969), in which the Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."

3

1  previously, it could not provide the court with the substance of those proceedings.  The

2  government contends Judge Burrell's discovery rulings from the § 4 proceedings are the law of

3  the case and therefore control the availability of CIPA information to petitioner.  The government

4  further contends that the discovery order is improper because the undersigned relied on

5  petitioner's ineffective assistance of counsel claims as the basis for its good cause finding,

6  because the discovery permitted is too broad, and because ordering the government to help

7  defense counsel obtain a security clearance violates the separation of powers.  Finally, the

8  government seeks a stay of the discovery order pending a ruling on its motion for reconsideration.

9      On September 5, 2017, petitioner filed an opposition to the motion for reconsideration.  (ECF

10  No. 635.)

11                    **LEGAL STANDARD FOR MOTION FOR RECONSIDERATION**

12      The court has discretion to reconsider and vacate a prior order.  Barber v. Hawaii, 42 F.3d

13  1185, 1198 (9th Cir. 1994); United States v. Nutri-cology, Inc., 982 F.2d 394, 396 (9th Cir.

14  1992).  Motions for reconsideration are disfavored, however, and are not the place for parties to

15  make new arguments not raised in their original briefs.  Northwest Acceptance Corp. v.

16  Lynnwood Equip., Inc., 841 F.2d 918, 925-26 (9th Cir. 1988).  Nor is reconsideration to be used

17  to ask the court to rethink what it has already thought.  United States v. Rezzonico, 32 F. Supp. 2d

18  1112, 1116 (D. Ariz. 1998).  "A party seeking reconsideration must show more than a

19  disagreement with the Court's decision, and recapitulation of the cases and arguments considered

20  by the court before rendering its original decision fails to carry the moving party's burden."

21  United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (citations

22  and internal quotation marks omitted).

23      Motions to reconsider are committed to the discretion of the court.  Combs v. Nick Garin

24  Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir.

25  1983) (en banc).  To succeed, a party must set forth facts or law of a strongly convincing nature to

26  induce the court to reverse its prior decision.  See Kern-Tulare Water Dist. v. City of Bakersfield,

27  634 F. Supp. 656, 665 (E.D. Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d

28  514 (9th Cir. 1987).  When filing a motion for reconsideration, Local Rule 230(j) requires a party

to show the "new or different facts or circumstances [] claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion[.]" The proponent of a motion for reconsideration must also explain why the facts or circumstances were not shown at the time of the prior motion. E.D. Cal. R. 230(j).

**ANALYSIS**

Rule 6 of the Rules Governing Section 2255 Proceedings states that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." A "party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories or requests for admission, and must specify any requested documents." Rule 6 of the Rules Governing Section 2255 Proceedings. Good cause for a discovery order exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy, 520 U.S. at 908-09.[4]

The Ninth Circuit, consistent with Bracy and Harris, has held repeatedly that habeas discovery is appropriate in cases where the discovery sought might only provide support for a claim. See, e.g., Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005); Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997) ("the test results may establish the prejudice required to make out such a claim" (emphasis added)). However, "courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." Calderon v. U.S. Dist. Ct. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996).

The court found that petitioner showed good cause for discovery, as three of the proposed requests -- after adjustment by the court -- were accompanied by sufficient reasoning and specific

---

[4] Bracy involved a petition by a state prisoner brought under 28 U.S.C. § 2254. It is relevant here because "section 2255 'was intended to mirror § 2254 in operative effect.'" United States v. Winkles, 795 F.3d 1134, 1141 (9th Cir. 2015) (quoting Jones v. Ryan, 733 F.3d 825, 830 n. 1 (9th Cir. 2013)). Where the language of the statutes is "functionally identical," the court in a section 2255 case may apply the reasoning of section 2254 cases. Id. Rule 6 of the Rules Governing Section 2254 Cases is in all essential respects the same as Rule 6 of the Rules Governing Section 2255 Proceedings. Therefore, as it did previously, the court looks to cases decided under section 2254 to inform its analysis.

allegations to show reason to believe that petitioner could, if the facts were fully developed, demonstrate that he is entitled to relief.  (ECF No. 630.)  In order to prove the prejudice prong of the ineffective assistance of counsel claim, the court found that petitioner was entitled to inquire about the steps taken by the government to inspect the Balakot site to determine whether it was a functional training camp at the time that petitioner was in Pakistan.  Thus, the court allowed petitioner to propound interrogatory number 1.

Furthermore, petitioner's ineffective assistance of counsel claims assert that trial counsel was ineffective in not seeking a security clearance, as well as not procuring an expert on the Balakot training camp.  The court found as well that these claims could be bolstered by the production of additional images of the Balakot camp, which, the government acknowledges exist.  In order to prove the prejudice prong of the ineffective assistance of counsel claim, the court found that petitioner was entitled to inquire about additional imagery of the Balakot training camp, which was available at the time of trial.  Thus, the court allowed petitioner to propound request for production number 1.

And finally, in order to prove the prejudice prong of the ineffective assistance of counsel claim, the court found that petitioner was entitled to inquire about evidence that refers to or discusses whether Balakot was a functioning militant training camp in 2003 and 2004.  It was clear from intelligence documents procured by petitioner via a Freedom of Information Act ("FOIA") request, that there was significant analysis of Pakistani training camps done by intelligence services at the time of trial and beforehand.  These documents, as with the satellite imagery, were not produced to counsel before trial.  Thus, the court found good cause for petitioner to propound request for production number 2.

Below, the court considers whether the government has satisfied its burden of showing reconsideration is necessary and, where it has, whether the government has shown a basis to reject or amend the court's discovery order.  The court considers the government's four challenges to the discovery order:  (1) that the "law of the case" doctrine prevents this court from reconsidering Judge Burrell's prior discovery rulings; (2) that the court erred in finding good cause for discovery based on petitioner's ineffective assistance of counsel claims; (3) that the

discovery permitted is too broad; and (4) that ordering the government to help defense counsel obtain a security clearance violates the separation of powers.

## I.     Judge Burrell's CIPA Discovery Rulings and the Law of the Case Doctrine

### A.   Should the Court Reconsider the August 14, 2017 Discovery Order?

#### 1.   Background

Pursuant to § 4 of CIPA, prior to trial the government may submit potentially classified information to the trial judge on an ex parte basis.  See United States v. Sedaghaty, 728 F.3d 885, 904 (9th Cir. 2013) (citing 18 U.S.C. app. 3 § 4; Fed. R. Crim. P. 16(d)(1)).   The judge may then hold an in camera hearing with only representatives of the government to determine whether the information must be provided to the defense in discovery.  The judge considers the government's obligations under Brady and whether the information is "relevant and helpful" as required by CIPA.  See id.  If evidence must be provided to the defense, then the court may consider in a § 4 proceeding whether an unclassified summary of the evidence, or substitution for the evidence, may be provided to the defense instead.  Id.

When determining the use and admissibility of classified information, the court looks to § 6 of CIPA.  18 U.S.C. app. 3 § 6.  Under § 6, the court may hold an in camera hearing, which would include counsel for the defense.  However, if the § 6 hearing will involve a discussion of the classified information, at a minimum, those participating must have the appropriate security clearance.

The § 4 procedure was utilized prior to trial in the present case.  The government filed notices informing the defendants that it was submitting CIPA documents to Judge Burrell under § 4.  (See ECF Nos. 69, 105, 116, 122, 123, 167.[5])   Apparently as a result of some or all of these proceedings, the government provided the defense with summaries of, or substitutions for, classified evidence.  (See Supp. Answ. at 78:6 (ECF No. 612 at 97).)

It appears from the record that the government sought to have a § 6 hearing in this case just once.  In January 2006, the government asked the court for a hearing under § 6 to consider the

---

[5] After trial, the government submitted additional filings under CIPA.  (See ECF Nos. 445, 446, 451, 462.)

admissibility of classified documents that were foundational to four aerial photographs of the Balakot area that prosecution witness Eric Benn would testify to at trial. (ECF No. 139; see also § 2255 Mot. at 44 n. 37 (ECF No. 531-1 at 54 n. 37)).)

At a hearing on the government's motion, the government expressed concern, as did Judge Burrell, that despite knowing the case involved CIPA materials, the defense attorneys had not sought security clearances. Therefore, the defense attorneys could not be involved in any § 6 proceeding. (See Trans. of Jan. 27, 2006 Hearing (ECF No. 398).) The issue was resolved when defendants and their counsel stipulated to admission of the four Balakot photographs and relinquished their right to participate in any in camera discussions held during trial about classified materials. (See Trans. of Feb. 3, 2006 Hearing (ECF No. 519).) Ms. Mojaddidi's waiver of the right to see classified materials is one of the bases for petitioner's ineffective assistance of counsel claim. (§2255 Motion at 41-49 (ECF No. 531-1 at 51-59).)

The substance of the government's § 4 submissions, the record of any proceedings, and Judge Burrell's rulings are all maintained under seal. (See n. 2, supra.) On August 29, 2017, the day after filing the motion for reconsideration, the government filed a Notice to Petitioner of In Camera, Ex Parte Filing Under Seal, alerting petitioner to the proposed submission of classified information to the court. (ECF No. 634.) On August 31, 2017, the undersigned reviewed the government's ex parte, in camera classified submission. (ECF No. 636.) On September 5, 2017, the court reviewed the ex parte in camera classified CIPA record from the criminal case-in-chief through the assistance of the Classified Information Security Officer. (Id.)

### 2. Newly Discovered Evidence

The court first addresses petitioner's argument in his opposition (ECF No. 635 at 4-5) that the contents of the government's submission cannot be considered "newly discovered" for the purpose of a reconsideration motion, because, as the government admits in the motion (ECF No. 633 at 9), the classified information and Judge Burrell's CIPA rulings were in the government's possession and able to be produced at the time the government opposed the motion for discovery.

This court must apply Local Rule 230(j) to decide whether respondent proffers requisite evidence to warrant reconsideration. See Goodstein v. Continental Cas. Co., 509 F.3d 1042, 1051

(9th Cir. 2007) (reviewing a district court's denial of a motion for reconsideration, and finding that the district court's reliance on its local rule was not an abuse of discretion).  Local Rule 230(j)(3) and (4) require that the moving party present, "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and why the facts or circumstances were not shown at the time of the prior motion."

The question before this court is whether the government's evidence submitted in the ex parte filing actually constitutes "newly discovered" evidence for the purpose of a motion for reconsideration.  As noted above, the government acknowledges that it has been in possession of this evidence -- including classified documents and classified rulings on CIPA issues by Judge Burrell before trial -- since before it filed an opposition to the motion for discovery.  (ECF No. 633 at 9.)  However, the government claims that it could not produce this information, even to the court, at the time that the opposition to the motion to discovery was filed because the undersigned had not yet obtained a security clearance necessary to review the evidence.  (Id.)

"The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" School Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (Multnomah Cty.) (citing Waltman v. International Paper Co., 875 F.2d 468, 473-74 (5th Cir. 1989) (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration)); Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1557 & n. 4 (9th Cir. 1987) (court did not abuse its discretion in refusing to consider affidavits opposing summary judgment filed late); Frederick S. Wyle Professional Corp. v. Texaco, Inc., 764 F.2d 604, 609 (9th Cir. 1985) (evidence available to party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment).  A reconsideration "motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003).

////

1    While the court may not have been able to view the classified documents at the time that the

2    opposition to the motion for discovery was due, the government could have reasonably notified

3    the court of their existence publicly and informed the court that it could review the documents

4    once the security clearance process was completed.

5        In the motion for reconsideration, the government did not submit the ex parte filings directly

6    to the court, nor did it make them available at the time the motion was filed. In fact, the motion

7    explicitly states that "[b]ecause of the logistical challenges of coordinating a sealed, ex parte

8    submission with the National Security Division, the United States Attorney's Office does not

9    know when the ex parte submission will be filed. It should be available to the Court no later than

10   the end of the week." (ECF No. 363 at 7 n. 1.) So, the government first made public arguments

11   on the basis of the classified information (ECF No. 363 at 8-12), filed a Notice to Petitioner of In

12   Camera, Ex Parte Filing Under Seal a day after the original motion was filed (ECF No. 364), and

13   then later made arrangements for the undersigned to view the material (ECF No. 636). The court

14   reviewed some material in chambers on August 31, 2017 and then reviewed additional

15   information on September 5, 2017. (ECF No. 636.)

16       This process demonstrates that a notice of the availability of classified information and an

17   argument concerning that information can be made publicly before the information is actually

18   presented to the court. Thus, the government was not foreclosed from referring to the classified

19   information and submitting accompanying arguments during the initial opposition to the motion

20   for discovery. As stated above, the rule concerning "newly discovered" evidence is quite rigid: if

21   the proffered evidence was available before resolution of a motion, then as a matter of law

22   movant is not entitled to reconsideration based upon that evidence. Frederick S. Wyle P.C, 764

23   F.2d at 609; Trentacosta, 813 F.2d at 1557-58 n. 4.

24       The court's research has found no instances in the Ninth Circuit or beyond where a party was

25   able to submit evidence under the newly discovered evidence exception when that evidence was

26   not actually newly discovered. So, while the government points to an apparent impediment to

27   presenting this evidence initially, this does not qualify as "newly discovered" because the

28   ////

government could have reasonably raised these same arguments and constructively presented this evidence to the court during the original motion briefing.

Despite possession of the material and knowledge of its significance, the government opted to omit both the evidence and the arguments during the initial briefing. By the letter of the law in the Ninth Circuit, the court cannot now accept this known quantity as being "newly discovered."

### 3. Highly Unusual Circumstances

However, "[t]here may also be other, highly unusual, circumstances warranting reconsideration." Multnomah Cty., 5 F.3d at 1263. What qualifies as a "highly unusual" circumstance is not yet defined though, nor does there appear to be available case law taking advantage of this catchall basis for reconsideration. Despite this, however, the court finds it appropriate to deem the current situation "highly unusual."

First, it appears that "highly unusual circumstances" are outside the standard parameters for reconsideration of an order, making this a special category beyond newly discovered evidence and clear error by the deciding court. In a Federal Rule 60(b) motion for relief from judgment, the Ninth Circuit has held that the catchall provision of "any other reason that justifies relief" requires a movant to establish the existence of "extraordinary circumstances." Twentieth Century Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981). See also Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985); Fuller v M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991).

As is clear in the order granting discovery, there is a dearth of case law addressing the intersection of classified information and habeas discovery. (ECF No. 630 at 16-21.) As noted there, CIPA only provides guidance for the handling of classified information discovery before and during a trial. Thus, issues concerning the availability, the presentation, and the use of classified information in the habeas context are either ill-defined or undefined. There was no concrete rule for the government to follow when it had an argument based upon classified information that could not, at that time, be seen by the judge presiding over the motion for discovery.

////

The evidence may have been available (thus, not "newly discovered"), but it could not be produced for the court's review. Despite the court's demonstration above that these arguments and the classified information could have been presented in an alternative, more timely manner, the undersigned will accept that the government has shown a reason for its failure to raise these issues in the ordinary process (i.e., during the original briefing on the discovery motion). Cf. Morse-Starrett Products Co. v. Steccone, 205 F.2d 244, 249 (9th Cir. 1953) ("The provisions of rule 60(b)(6) were not intended to benefit the unsuccessful litigant who long after the time during which an appeal from a final judgment could have been perfected first seeks to express his dissatisfaction. The procedure provided by rule 60(b) is not a substitute for an appeal.")

While the court would have preferred that the government present this evidence when it was first implicated at the time of the original motion, these circumstances are so rare and the information so particularly sensitive, that the government may legitimately have deemed it impossible to reveal before the undersigned had finished the security clearance process. Furthermore, the situation is even more unusual because the ex parte submissions include not only evidence from the case, but also rulings of the presiding judge, which, because of their classified nature, could not be considered and reviewed by this court when initially ruling upon the discovery motion.

While the court hesitates to use the term "newly discovered evidence" because the government was in possession of the material all along and the definition of "newly discovered" is clear, the court will consider the submission under the "highly unusual" circumstances exception. So, in an abundance of caution, the court finds that "highly unusual" circumstances exist here that justify reconsideration of the court's discovery order.

**B. Are Judge Burrell's Prior Rulings the Law of the Case?**

The government first argues that Judge Burrell, before trial, already ruled on all CIPA issues, which encompasses the discovery sought after in these habeas proceedings. According to the government, "Judge Burrell's rulings necessarily establish that the government complied with its Brady obligations before, during, and after trial because CIPA review protects a defendant's due process rights." (ECF No. 632 at 6.)

12

The law of the case doctrine generally precludes a court from reconsidering an issue that has been previously decided by the same court, or a higher court in the same case.  United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997).  For law of the case to apply, "the issue in question must have been decided either expressly or by necessary implication in the previous disposition." Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993) (internal quotations and punctuation omitted) (quoting Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990).) While courts have some discretion not to apply the doctrine of law of the case, that discretion is limited.  Thomas, 983 F.2d at 155 (citing Merritt v. Mackey, 932 F.2d 1317, 1320 (9th Cir. 1991)).  The Ninth Circuit has identified five circumstances in which a court may reopen a previously resolved question:  "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; [or] (5) a manifest injustice would otherwise result."  Id. (citing Milgard, 902 F.2d at 715).

In this case, as noted above, the government made several ex parte filings under CIPA, sought protective orders, and provided notice of the filings to the defense.  (ECF Nos. 13, 69, 71, 105, 116, 122, 123, 137, 138, 139, 167, 170, 171, 175, 177, 204, 279).  The publicly-available docket shows that Judge Burrell granted requests for protective orders and approved redactions. (ECF Nos. 174, 184, 252, 272.)  The government points to the Ninth Circuit's affirmance of Judge Burrell's CIPA rulings as further support for application of the law of the case doctrine. However, the only issue on appeal regarding CIPA rulings involved limitations on the defense's ability to cross-examine prosecution witness Khan.  United States v. Hayat, 710 F.3d 875, 899-900 (9th Cir. 2013); Appellant's Opening Brief in United States v. Hayat, No. 07-10457 (9th Cir.), 2008 WL 4212795, at **44-53.  The government's motion for reconsideration raises issues relating only to the discovery granted by this court.  The discovery was limited to materials

////

////

////

////

13

regarding the Balakot camp.[6]  Therefore, the fact that the Ninth Circuit affirmed Judge Burrell's CIPA rulings on the disclosure of evidence regarding witness Khan is not preclusive here. Nonetheless, the undersigned recognizes that relevant rulings may have been made by Judge Burrell.[7]

Petitioner argues the law of the case doctrine should not apply for two reasons.  First, the issues before this court are not the same as the issues before Judge Burrell.  Judge Burrell would have considered whether Brady and CIPA standards required the government to disclose information; the issues before this court include petitioner's claim that counsel was ineffective for failing to seek a security clearance and thereby have access to classified information.  Petitioner's argument is not persuasive.  The standards for materiality under Brady and prejudice under Strickland are the same.  See United States v. Olsen, 704 F.3d 1172, 1187-88 (9th Cir. 2013). Further, this court is also bound by CIPA standards in considering the necessity of disclosure. Therefore, the legal standards that this court would review CIPA submissions are the same as the standards by which Judge Burrell would have reviewed CIPA submissions.

Petitioner's second basis for rejection of the law of the case doctrine is his presentation of new evidence.  Petitioner states that Ms. Mojaddidi's deposition testimony and the aerial photographs discovered through petitioner's FOIA request are evidence that was not before Judge Burrell when he ruled on the discoverability of CIPA materials.

Petitioner does not, however, explain why either of these items of evidence would or should have changed any decisions Judge Burrell may have made regarding materials relating to the Balakot camp.  Ms. Mojaddidi's deposition testimony is relevant to the reasonableness of her

---

[6] The government also states that any claims concerning CIPA review that were not presented on direct appeal have been waived.  (ECF No. 633 at 4 (citing United States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2016) (requiring cause and actual prejudice or actual innocence to overcome procedural default).)  Because, as discussed below, the court finds no basis to overturn Judge Burrell's prior rulings, it need not consider this waiver issue.

[7] As the Ninth Circuit has noted, the classified nature of the material at issue highlights the "awkward nature of [the court's] review."  Sedaghaty, 728 F.3d at 906.  Because this court may not discuss publicly what it found in the sealed CIPA records, the court's ruling is premised on what Judge Burrell may, or may not, have done in reviewing those records.

conduct. The Balakot camp discovery, on the other hand, relates to the prejudice prong of Strickland, as well as to the materiality standard of Brady. Further, the court cannot discern why the FOIA materials would have made any difference in Judge Burrell's possible review of materials provided to him by the government. Any materials the government provided to Judge Burrell for § 4 review would have stood on their own as either material or immaterial. In sum, the court finds that petitioner has not established the application of any of the exceptions to the law of the case doctrine set out in Thomas.

While the court is not convinced by petitioner's arguments for an exception to the law of the case, it is necessary at this juncture to make clear that all information responsive to the discovery order would not necessarily have been addressed by Judge Burrell previously. The government's argument that Judge Burrell's rulings establish that the government complied with its Brady obligations ignores the fact that Judge Burrell did not necessarily rule on every bit of information that might fall under Brady. Judge Burrell only ruled on the materials provided to him by the government. There may be other materials responsive to the discovery requests approved by this court which were not previously provided to Judge Burrell by way of § 4 of CIPA or otherwise. Further, the foundational documents which were the subject of the government's motion for a § 6 proceeding have never been held to be non-discoverable. They were either determined by Judge Burrell to be discoverable after § 4 review or they did not go through § 4 review because the government understood that they must be provided to the defense under Brady.

To summarize, the court's discovery order could be considered applicable to three categories of information: (1) information already considered by Judge Burrell in § 4 proceedings; (2) information that was not provided to Judge Burrell for § 4 review; and (3) the foundational documents for the four Balakot aerial photographs used at trial by government expert Eric Benn.

With respect to the first category, whether or not the law of the case applies to Judge Burrell's rulings, the court's decision is the same. If it applies, then the government need not turn over information in response to the discovery requests if that information was provided to Judge Burrell in a § 4 proceeding. If this court is not bound by the law of the case and based on the court's examination of the CIPA record, the undersigned finds no basis to overturn Judge

Burrell's rulings on any CIPA information, including any information Judge Burrell may have considered that is responsive to the discovery approved by this court.

Regarding the second category of information – information responsive to the discovery requests that was not provided to Judge Burrell previously – the court affirms its finding of good cause for this discovery. As the court explained in the order authorizing discovery, petitioner presented sufficient facts and allegations to establish the materiality of the sought-after discovery. (See ECF No. 630 at 10-11.) While the court focused on the materiality of that information to petitioner's ineffective assistance of counsel claim in the prior order, further understanding of the CIPA process for review, in particular the ex parte § 4 process, leads the court to conclude that the better rationale for the discovery rests on petitioner's Brady claim.

Finally, the court finds that the third category of information – the foundational documents for the four Balakot photographs – falls easily within the scope of the court's discovery order. The publicly-available record shows that Judge Burrell did not make a ruling that these foundational documents need not be provided to the defense. As stated previously, those records are directly relevant to the prejudice prong of petitioner's ineffective assistance of counsel claim.

## II. Did the Court Err in Finding Good Cause for Discovery Based on Ineffective Assistance of Counsel Claims?

Next, the government argues that the failure of trial counsel to obtain a security clearance as good cause is "a sua sponte, and legally unsupportable basis for granting discovery." (ECF No. 633 at 12.) The court rejects this argument because, on one hand, it presents a legally and factually unsupported argument for reconsideration, and, on the other hand, it reargues the merits of the original motion.

First, the government asserts that the court's authorization of discovery to support ineffective assistance of counsel claims was sua sponte and inappropriate. (Id.) Specifically, the government claims that the court "sua sponte, decided to re-visit the trial court's evidentiary rulings and CIPA rulings to justify granting discovery regarding classified material." (Id.) This reading of the court's opinion ignores the arguments presented by petitioner in his motion for an order

authorizing discovery, in which he specifically raises the issue of counsel's ineffectiveness as grounds for discovery. (See ECF No. 619-1 at 12-13.)

Even if the court were to establish a basis for authorizing discovery sua sponte, that is not grounds for overturning the ruling. While the government cites to multiple cases in which judges cast negative judgments on a court creating its own reasoning, see, e.g., Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005) (noting perils of considering unraised issues sua sponte and reversing for application of wrong legal standard), there is no bright line rule disallowing a court from making a ruling when neither party raises the proper position in the papers. Further, and as discussed above, the court also finds good cause for the discovery under Brady for materials that were not provided to Judge Burrell for § 4 review.

In related arguments, the government contends that Judge Burrell's ruling on a defense objection at trial has preclusive effect here, that petitioner has waived his right to revisit that objection, and that classified information would not have been introduced at trial even if Mojaddidi had had security clearance. None of these arguments compel reconsideration of the court's ruling because they could have been raised previously. See Northwest Acceptance Corp., 841 F.2d at 925-26 (motions for reconsideration are disfavored and are not the place for parties to make new arguments not raised in their original briefs).

Further, each argument fails on its merits. First, Judge Burrell's rulings at trial on Ms. Mojaddidi's attempts to ask Eric Benn about the government's investigations into the Balakot camp and about other images he may have reviewed were based, at least in part, on the stipulation the defense entered into about the four Balakot photographs. (See RT 3079-3081.) Petitioner's claim is that Mojaddidi acted unreasonably in entering into that stipulation. Obviously, had she not done so, Judge Burrell's rulings on objections to her questions to Eric Benn may very well have been different.

Second, petitioner's waiver at trial of his rights to challenge the foundational materials for the Balakot photographs and to participate in in camera discussions of CIPA materials necessarily flowed from counsel's agreement to the same. Had counsel not agreed to the stipulation and waiver, petitioner would not have been put in the position to do so either.

And, finally, the fact that Mojaddidi's questions implicated classified information that could not have been introduced at trial is beside the point. Mojaddidi gave up the right to examine the foundational documents to the four Balakot photographs or challenge Benn's reliance on the photographs to the extent that reliance implicated classified material. Just because the materials may not have been admissible does not mean the defense might not have more successfully challenged the four Balakot photographs and Benn's opinions based on them, or even sought to have them excluded, had they known the foundational materials.

### III.    Is the Scope of the Discovery Authorized Overbroad?

Next, the government argues that this court improperly relied upon Federal Rule of Civil Procedure 26(b) to provide petitioner with overly-broad discovery. (ECF No. 633 at 16-17.) This argument stems from a misreading of the court's initial order, which was based, appropriately, upon the doctrine laid down by the Supreme Court in Bracy and Harris.

In the initial order authorizing discovery, the court commented upon the government's predominant argument that the discovery requests constituted a "fishing expedition." In doing so, the court imported language from a non-habeas case, Myers v. The Prudential Ins. Co., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008), which recognized that "much of discovery is a fishing expedition of sorts," and the more-significant questions are for the court to determine "[t]he pond, the type of lure, and how long the parties can leave their lines in the water." In citing to Myers, the court was generally stating that "virtually all discovery involves at least some degree of fishing. If petitioner could already specifically identify the sought-after discovery in intricate detail, then there would be no need for him to make the requests." (ECF No. 630 at 9.)

Despite the government's statement otherwise, the legal standard for the court's decision-making was abundantly clear. Specifically, the court followed Rule 6 of the Rules Governing Section 2255 Proceedings, as well as the Supreme Court's rulings in Bracy and Harris, which outline the good cause standard. (ECF No. 630 at 3-4 ("Legal Standard" section of the order).) The undersigned further noted, in reliance upon Calderon v. U.S. Dist. Ct. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996), that "courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." (ECF No. 630 at 4.)

18

In presenting a brief excerpt from <u>Myers</u>, the court utilized language that makes a valid point about the overuse of and over-reliance upon the term "fishing expedition" by parties to discovery disputes. In fact, the quote was immediately followed by a disclaimer explicitly recognizing that "this quoted language comes from a civil matter where the rules are much different[.]" (ECF No. 630 at 9.) At no point did the court rely upon <u>Myers</u> as a legal standard for determining whether petitioner has presented good cause for discovery. In fact, the paragraph mentioning <u>Myers</u> is followed by Ninth Circuit case law holding that "[i]n section 2255 proceedings, a petitioner may not use discovery to 'investigate mere speculation.'" (<u>Id.</u> (quoting <u>Rich v. Calderon</u>, 187 F.3d 1064, 1067 (9th Cir. 1999)).) This is followed by a string of citations to section 2255 cases before the Ninth and Eleventh Circuit Courts of Appeal warning against the use of discovery "'to explore [a] case into existence.'" (<u>Id.</u> (quoting <u>Rich</u>, 187 F.3d at 1067).)

Thus, the government's argument that this court improperly relied upon <u>Myers</u> and imported Rule 26 of the Federal Rules of Civil Procedure is a misreading of the court's opinion and does not provide a basis for reconsideration.

**IV.     Does the Discovery Order Violate the Separation of Powers?**

Finally, the government argues that this court oversteps its bounds by ordering the government to provide petitioner's counsel with a means to apply for a security clearance. (ECF No. 633 at 19.) As with the grounds concerning Rule 26, this argument stems from a misreading of the court's original order.

The government cites to a number of cases standing for the principle that access to classified information may be granted only by the Executive Branch. <u>See</u> <u>Dep't of the Navy v, Egan</u>, 484 U.S. 518, 526-27, 529 (1988) (The granting of a security clearance and the authority to determine who may have access to classified information are "committed by law to the appropriate agency of the Executive Branch," and "flow[] primarily from [a] constitutional investment of power in the President."); <u>see also</u> <u>Brazil v. Dep't of the Navy</u>, 66 F.3d 193, 196 (9th Cir. 1995) ("security clearance determinations are 'sensitive and inherently discretionary' exercises, entrusted by law to the Executive" (quoting <u>Egan</u>, 484 U.S. at 527-29). "The decision to grant or revoke a security clearance is committed to the discretion of the President by law." <u>Dorfmont v. Brown</u>, 913 F.2d

19

1    1399, 1401 (9th Cir. 1990) (Executive's determination about which persons may access classified

2    information, and under what circumstances, is "sensitive and inherently discretionary." (Quoting

3    Egan, 484 U.S. at 527.)).

4         The court agrees with the government's position on this issue.  That is why the order

5    authorizing discovery was carefully worded so as to not require the government to grant a

6    security clearance to petitioner's counsel, nor to require the government to turn over classified

7    materials.  As specifically stated in the order authorizing discovery, "the court orders the

8    government to establish a process by which petitioner's counsel may apply for a security

9    clearance."  (ECF No. 630 at 21.)  As the court was not ordering the government to approve

10   petitioner's counsel for a security clearance, nor ordering the government to provide classified

11   information to petitioner's counsel, the government's argument is not relevant to the specific

12   order.

13                                    **CONCLUSION**

14        The court finds the government has established a basis for reconsideration of the discovery

15   order based on the revelation of proceedings on the discoverability of CIPA materials conducted

16   by Judge Burrell prior to trial.  The court further again finds that the discovery requests

17   previously approved are supported by good cause.  The three requests may produce materials

18   relevant to petitioner's claims of ineffective assistance of counsel and that the government

19   violated its disclosure obligations under Brady.

20        The court will order the government to respond to the discovery requests with the

21   understanding that the government need not provide any materials which Judge Burrell

22   previously determined the government need not disclose.  However, any materials responsive to

23   the discovery requests which were not considered by Judge Burrell must be provided.  In

24   addition, the foundational documents for the four Balakot photographs which were the subject of

25   the government's motion for a § 6 hearing in January 2006, are covered by the discovery

26   requests.  Finally, the court recognizes that discoverable information may be subject to CIPA

27   procedures.  The court expects the government to make appropriate motions to institute CIPA

28   ////

                                           20

procedures for the purpose of determining how the information responsive to the approved discovery requests may be provided to the defense.

It is possible, however, that the issue of procuring security clearance for defense counsel may be moot. The court has learned that an attorney or attorneys in the Office of the Federal Defender in this district have appropriate security clearance. The court is willing to appoint a cleared attorney for the limited purpose of participating in the proceedings to review the documents responsive to the approved discovery. Petitioner's counsel will be given an opportunity to inform the court whether they are willing to proceed in this manner or whether they wish to have one or more of petitioner's current counsel seek security clearance.

The court finds no other bases to reconsider its prior order. Accordingly, IT IS HEREBY ORDERED that:

1. The government's August 28, 2017 motion for reconsideration (ECF No. 633[8]) is granted.

2. The government's August 28, 2017 motion for a stay (ECF No. 633) of the court's August 14 discovery order pending a decision on this motion for reconsideration is granted.

3. The court's August 14, 2017 order is affirmed as follows:

   a. Petitioner's motion for an order authorizing discovery (ECF No. 619) is granted in part and denied in part for the reasons set forth herein and in the court's August 14 order.

   b. The government shall respond to petitioner's three discovery requests identified in the August 14 order within ten days of the filed date of this order.

   c. Within ten days of the filed date of this order, petitioner's counsel shall inform the court whether one or more of them will seek security clearance for purposes of reviewing this discovery or whether they are willing to have the court appoint pre-cleared counsel to assist with these discovery proceedings.

---

[8] The government amended its original motion for reconsideration (ECF No. 632). Therefore, the Clerk of the Court is directed to terminate that motion.

d.   If petitioner's counsel will seek security clearance for themselves, the government shall provide petitioner's counsel with a means to apply for security clearance as outlined in the August 14 order within ten days of service of petitioner's statement set out in subparagraph c.

Dated:  October 6, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/hayat disc.recon final