1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No.  2:05-cr-0240 GEB DB

12                  Plaintiff/Respondent,

13          v.                                     ORDER

14   HAMID HAYAT,

15                  Defendant/Petitioner.

16

17          Respondent's six motions in limine came on for hearing December 14, 2017 before the

18   undersigned.  Dennis Riordan, Donald Horgan, Martha Boersch, and Sean Riordan appeared for

19   petitioner.  Andre Espinoza, Roger Yang, and Jennifer Levy appeared for respondent.  After

20   considering the parties' briefs, the record in this case, and the argument of counsel, the court

21   makes the following findings and orders.

22                              **RELEVANT BACKGROUND**

23          On June 7, 2017, the court granted petitioner's motion for an evidentiary hearing.  (ECF

24   No. 616.)  The court found a hearing appropriate on petitioner's claims of ineffective assistance

25   of counsel based on petitioner's allegations of a conflict of interest under Cuyler v. Sullivan and

26   of counsel's unreasonable conduct under Strickland v. Washington.  Petitioner claims a conflict

27   of interest was inherent in the relationship between counsel for Umer Hayat, Johnny Griffin, and

28   counsel for petitioner, Wazhma Mojaddidi, which resulted in the following adverse actions, or

                                                    1

inactions, by Mojaddidi: (1) the failure to procure Pakistani alibi witnesses; (2) the failure to procure domestic alibi witnesses; (3) the failure to procure an expert concerning the Balakot training camp; (4) the failure to obtain Classified Information Procedures Act ("CIPA") security clearance; (5) the failure to move for severance from the trial of Umer Hayat; (6) the failure to move to suppress defendant's statements to law enforcement officers; (7) the failure to procure a false confession expert; (8) the failure to have defendant testify; and (9) the failure to request a bill of particulars or to object to the government's constructive amendment of the indictment. Petitioner further claims Mojaddidi acted unreasonably under Strickland by failing to act in each of the above-listed ways and also acted unreasonably by: (1) failing to challenge the expert testimony about the Balakot camp; (2) failing to challenge the expert testimony regarding the ta'wiz; (3) failing to obtain a more qualified expert to testify about the ta'wiz; and (4) failing to adequately cross-examine prosecution witness Naseem Khan.

The court originally scheduled the evidentiary hearing to begin on October 23, 2017. (ECF No. 621.) That hearing has now been continued to begin on January 29, 2018. (See ECF No. 664.) On October 2, 2017, the government filed six motions in limine.[1] They are:

(1) a motion to exclude the testimony of Ghulam Hasnain Aaser as an expert on Pakistani jihadi training camps (ECF No. 641);

(2) a motion to exclude the testimony of Dr. Haykel and Imam Anwar as experts on the meaning of the ta'wiz (ECF No. 642);

(3) a motion to exclude the testimony of alibi witnesses (ECF No. 644);

(4) a motion to exclude the testimony of Dr. Richard Leo as an expert on the psychological aspects of interrogation techniques and false confessions (ECF No. 646);

(5) a motion to disqualify attorney Dennis Riordan or exclude his testimony (ECF No. 648); and

---

[1] Also on October 2, petitioner filed a motion to compel responses to his discovery requests. (ECF No. 645.) The parties agree that this motion is moot due to the pending motion for reconsideration of the discovery order.

2

(6)        a motion to exclude the testimony of the <u>Strickland</u> experts (ECF No. 647).

Petitioner filed an opposition to the motion to disqualify Dennis Riordan (ECF No. 650) and an omnibus opposition to the remaining motions (ECF No. 651).  The government filed one reply to all motions.  (ECF No. 656.)  The court addresses each motion below.

**MOTIONS IN LIMINE**

In each motion, the government argues that an evidentiary hearing is not necessary on petitioner's ineffective assistance of counsel claims and also argues the merits of those claims generally.  The court will not address those arguments here.  In the June 7 order, the court determined that an evidentiary hearing is appropriate on petitioner's ineffective assistance of counsel claims.  The government did not seek reconsideration of that order.  The court will not reconsider, at this late date, the arguments the government made previously nor will it consider the arguments which the government should have, but failed to, make in its opposition to the motion for an evidentiary hearing.  <u>See</u> E.D. Cal. R. 230(j).  Below, the court considers the government's remaining arguments in support of its motions in limine.

## I.        Motion to Exclude Testimony of Mr. Aaser

Petitioner lists Ghulam Hasnain Aaser,[2] a former Pakistani journalist and a naturalized citizen of the United States, as an expert witness.  (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 7-8).)  Petitioner summarizes Aaser's testimony as follows:

> He has been a journalist since 1987 and has been covering religious extremism and militancy since 1992. He began to focus his investigative work on Pakistan in 1996. Hasnain will present informed expert testimony to the effect that the militant camps in the Balakot area in the early 2000s were effectively shuttered by the end of 2002 due to pressure from the United States government. He will further opine that the JEM camp in the Balakot area at the coordinates testified by the government witness Eric Benn was closed before October of 2003. Such testimony will undermine the prosecution's claim that Mr. Hayat attended such a camp in or near Balakot during the relevant time period, thereby supporting elements of defendant's conflict and <u>Strickland</u> claims.

(ECF No. 637 at 7-8.)

---

[2] The parties refer to this witness as both Hasnain and Aaser.

3

The government seeks the exclusion of Aaser's testimony on a number of grounds. (ECF No. 641.) Petitioner opposes the motion (ECF No. 651) and the government filed a reply (ECF No. 656). The court finds several grounds sufficient to support the government's motion.

Petitioner fails to show that Aaser qualifies as an expert under the standards for the admission of expert testimony set out in Federal Rule of Evidence 702. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Petitioner does nothing to show that Aaser's testimony is based on "sufficient facts or data" or that is it the "product of reliable principles and methods." In fact, in his opposition and at the hearing on this motion, petitioner retreated from the "expert" label. (See ECF No. 651 at 27-28.) Rather, petitioner now contends Aaser should be permitted to testify as a "respected journalist" and as a percipient witness. However, according to his declaration, the only camp Aaser observed was in the Muzaffarabad area, not in the Balakot area. (See ECF No. 637-15.) A map provided by the government, and unchallenged by petitioner, shows that Muzaffarabad is 531 kilometers from Balakot. (ECF No. 641-1.) Petitioner does not contest that characterization of Aaser's experience.

It appears that any testimony Aaser might provide with respect to camps operating in the Balakot area would be based on information he received from unnamed members of militant groups he met in other areas. Nothing in Aaser's declaration indicates he has first-hand knowledge of any camps in the Balakot region or of their closure.

Petitioner bears the burden of establishing, by "a preponderance of proof" that Aaser is qualified to testify as an expert. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592

n.10 (1993). In his very brief opposition to the government's motion, petitioner fails to establish that Aaser is qualified to testify as an expert on jihadi training camps in the Balakot area during the time period in question. (ECF No. 651 at 27-28.) Nor does petitioner make much effort to show that Aaser has relevant, admissible testimony as a non-expert witness. Petitioner argued at the hearing that the government's witness at trial on Pakistani jihadi camps, Mr. Abbas, testified based on third-party information. However, Mr. Abbas was qualified as an expert at trial. See United States v. Hayat, 710 F.3d 875, 884 (9th Cir. 2013) (Abbas testified as "an expert on extremist groups"). Experts are permitted to rely on third-party information as a basis for their opinions. Daubert, 509 U.S. at 592. Because Mr. Aaser does not qualify as an expert, the comparison to Mr. Abbas is inapt. The government's motion to exclude Aaser's testimony will be granted.

## II.     Motion to Exclude Testimony of Dr. Haykel and Imam Anwar re Ta'wiz

Petitioner alleges Mojaddidi was ineffective for failing to thoroughly challenge a prosecution witness's testimony that a piece of paper found in petitioner's wallet, known as a "ta'wiz," was a supplication that would only be carried by a jihadist. (§ 2255 Mot. (ECF 531-1 at 105-108).) Petitioner seeks to present the testimony of two witnesses, Dr. Haykel and Imam Anwar, to show that the ta'wiz was a prayer that many Muslims carried, particularly when travelling. (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 7).) The government moves to preclude the testimony of these witnesses by arguing that the Ninth Circuit impliedly rejected this claim, the witnesses' testimony is cumulative of trial testimony, and Imam Anwar is not qualified to testify as an expert. (ECF No. 642.) Petitioner opposes the motion (ECF No. 651) and the government filed a reply (ECF No. 656).

### A.  Background

At trial, the prosecution presented the testimony of Dr. Khaleel Mohammed, an expert on Arabic and Islam, to testify concerning petitioner's ta'wiz. Dr. Mohammed testified that the "kind of person" who would carry this supplication is "[a] person who perceives him or herself as being engaged in war for God against an enemy." See Hayat, 710 F.3d at 911 (Tashima, J.,

////

dissenting) (summary of Dr. Mohammed's testimony at trial).  He further testified that there is "no other way that it could be used."  Id.

Mojaddidi sought to present the testimony of Professor Anita Weiss.  However, a portion of Weiss's testimony, which included a translation of the ta'wiz and an explanation for it, was excluded as a sanction for Mojaddidi's discovery violation.  Further, the trial judge found that Weiss was not qualified to testify about an Arabic writing because she could not translate it herself.  Weiss testified only about ta'wiz supplications generally.  (RT 4178-4195.)

On appeal, petitioner argued that the trial judge erred when he excluded Professor Weiss's testimony identifying the note as a ta'wiz.  The Ninth Circuit held the trial judge did not abuse his discretion in excluding that testimony.  The court also noted that Weiss testified at length about "ta'wiz charms" generally and about their cultural significance.  The court stated that Weiss was only prohibited from specifically identifying the note found in petitioner's wallet as a ta'wiz.  Id. at 902.  The Ninth Circuit expressed no opinion about the choice of Weiss as an expert or about Mojaddidi's failure to provide discovery regarding Weiss to the government in a timely manner.

Petitioner now seeks to present the testimony of two experts on Muslim culture to testify that the ta'wiz is a common Arabic prayer carried by Muslims.  Petitioner's first expert is Dr. Bernard Haykel, a Middle Eastern Studies professor.  Petitioner summarizes his testimony as follows:

> Professor Bernard Haykel is a professor of Middle Eastern Studies and History at the Department of Middle Eastern and Islamic Studies at New York University, a position he has held since 1998. He has traveled extensively in the Middle East and Southeast Asia and is fluent in Arabic. Dr. Haykel will present informed expert testimony persuasively undermining the trial prosecutions' critical contention that the supplication, written in Arabic and carried by Mr. Hayat, supplied evidence that Hayat intended to engage in jihad against the United States. The availability of such expert testimony, in conjunction with Ms. Mojaddidi's failure to seek and present it at trial, supports particular elements of defendant's conflict and Strickland claims.

(ECF No. 637 at 7.)

Petitioner's second expert is Tahir Anwar, an Imam from the San Francisco Bay area.  His testimony is summarized here:

6

> Tahir Anwar is an Imam at the South Bay Islamic Association in San Jose, California, a position he has held since 2001. He teaches Islamic law at Zaytuna College in Berkeley, California, is very familiar with South Asian religious and cultural practices, and reads and writes Arabic comfortably. Like Dr. Haykel, Imam Anwar will present informed expert testimony undermining the claim that the supplication carried by Mr. Hayat supported an inference that he intended to wage jihad in this country or anywhere else. The availability of such testimony will be relevant for the reasons stated in connection with the testimony of Professor Haykel.

(Id.)

### B. Analysis

Initially, the court notes that the government's position that the Ninth Circuit's decision bars this ineffective assistance of counsel claim is both untimely, because it is a challenge to the merits of this claim, and unsupported. The claim regarding Mojaddidi's ineffectiveness was not raised on appeal. Further, the fact that the Ninth Circuit noted that Weiss gave some good testimony does not necessarily mean she was a reasonable choice as an expert. Therefore, this court does not construe the Ninth Circuit's ruling as having any conclusive effect on petitioner's claim that counsel was ineffective for failing to present better expert testimony regarding the ta'wiz.

The government's argument that the testimony of these witnesses is "cumulative" of Dr. Mohammed's and Professor Weiss's trial testimony simply ignores the fact that Dr. Mohammed identified the ta'wiz carried by petitioner as one carried only by jihadists. Dr. Haykel and Imam Anwar's proposed testimony would have given the jury an opposing view. Further, because Professor Weiss was not permitted to testify about the specific ta'wiz carried by petitioner, Haykel and Anwar's proposed testimony is also not cumulative of hers.

The government has a better argument that Anwar is not qualified to testify as an expert. In his declaration, Anwar states that he is an Imam in San Jose. (ECF No. 637-15.) He also teaches Islamic law. He reads and writes Arabic. He states that he is very familiar with South Asian religious and cultural practices because of his family and educational background and because many of his congregants are of Indo-Pakistani origin. He states that he knows this particular prayer found on petitioner and has used it himself.

The government argues that this sort of personal and anecdotal evidence in not admissible expert testimony. Anwar does have specialized knowledge. He is familiar with the ta'wiz, has experience with Pakistani Muslim culture, and is familiar with this particular prayer. However, these experiences are limited, personal, and anecdotal. This court agrees that Anwar does not meet the standards of Federal Rule of Evidence 702. <u>Cf.</u> <u>Garcia v. Los Banos Unified Sch. Dist.</u>, No. 1:04-CV-6059-SMS, 2007 WL 715526, at *5 (E.D. Cal. Mar. 8, 2007) ("knowledge of Spanish and even some anecdotal experience with Mexican citizens would not appear to qualify the psychologist as a cultural expert").

The court finds, however, that Mr. Anwar's testimony would have been relevant. He has specialized knowledge not available to the average juror. Further, his testimony would contradict the testimony of Mr. Mohammed that only a jihadi would have carried this particular ta'wiz. The court finds that Anwar's testimony can be taken as lay witness opinion testimony under Federal Rule of Evidence 701. Rule 701 provides that a lay witness opinion has the following limitations:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Anwar's declaration is based on his personal experience. While it is may not be enormously helpful given that limited personal experience, that is a question of the weight of his testimony, not its admissibility.

For the reasons set forth above, the court will deny the government's motion to exclude Dr. Haykel's testimony and grant the government's motion to exclude Mr. Anwar as an expert witness but permit him to testify as a lay witness.

**III.    Motion to Exclude Testimony of Alibi Witnesses**

Petitioner seeks to present testimony at the evidentiary hearing of five witnesses who reside in the United States that they saw petitioner on a regular basis during his time in Pakistan

8

and he could not have been in the Balakot region for three to six months.  (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 3-5).)  Petitioner also seeks to present the similar testimony of four witnesses who reside in Pakistan.  (Id. at 2-3; ECF No. 672.)  Whether, and how, the Pakistani witnesses' testimony will be taken is the subject of a separate motion.  (See ECF Nos. 672, 683.)

The government moves to exclude the alibi witnesses' testimony on the grounds that the previously-assigned magistrate judge and the district judge already decided this claim.  (ECF No. 644.)  Petitioner opposes this motion (ECF No. 651) and the government filed a reply (ECF No. 656.).  Specifically, the government argues that when the district judge denied petitioner's summary judgment motion, he essentially found that petitioner cannot show he was prejudiced by Mojaddidi's failure to procure alibi testimony at trial.[3]  The district judge ruled as follows:

> "To determine whether counsel's errors prejudiced the outcome of the trial, we must compare the evidence that actually was presented to the jury with that which could have been presented had counsel acted appropriately." Cannedy v. Adams, 706 F.3d 1148, 1163 (9th Cir. 2013).
>
> The evidence Hayat's new counsel provides in support of Hayat's motion does not alter the "evidentiary picture" involved with his conviction, which includes Hayat confession that he trained at the Balakot camp for "a few days." See Strickland, 466 U.S. at 696. Hasnain's proffered testimony is not clear on the closure status of the Balakot camp at the time Hayat confessed he trained there. Further, the individuals declaring they spent time with Hayat while he was in Pakistan fail to provide specifics such as actual dates on when they saw Hayat, and personal knowledge about Hayat's activities when they were not with him.  The potential alibi witnesses' testimony is insufficient to satisfy Hayat's "burden of showing that the decision [the factfinder] reached would reasonably likely have been different absent the [counsel's failure to adequately investigate alibi witnesses] error[]." Strickland, 466 U.S. at 696.
>
> Nor has Hayat shown in his motion that the asserted errors before and during trial——including counsel's failure to object to testimony regarding existence of the terrorist camp, failure to obtain a security clearance, failure to retain and call a false confessions expert, failure to properly challenge testimony regarding the Arabic writing found in Hayat's wallet, and failure to adequately cross-

---

[3] In its opening brief, the government also argued that this court should consider the findings of the previously-assigned magistrate judge that Mojaddidi did not act unreasonably as controlling on that issue.  After petitioner pointed out in his opposition that the district judge explicitly rejected the magistrate judge's findings on unreasonableness, the government did not pursue that argument in its reply.  (See ECF Nos. 651 at 22-23 and 656 at 8-11.)

9

examine the government's informant——constitute prejudice under Strickland.

Prejudice is found if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of a proceeding. Id. "Thus, a petitioner need not prove 'counsel's actions more likely than not altered the outcome,' but rather he must demonstrate that '[t]he likelihood of a different result [is] substantial, not just conceivable.'" Clark v. Arnold, 769 F.3d 711, 725 (9th Cir. 2014) (alterations in original) (quoting Harrington, 562 U.S. 86, 112 (2011)). "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, Strickland asks whether it is reasonably likely the result would have been different." Walker v. Martel, 709 F.3d 925, 942 (9th Cir. 2013) (citation and quotes omitted).

Here, the summary judgment record does not justify finding prejudice under Strickland.

(ECF No. 600 at 18-19.)

Initially, the court notes that the government should have raised this issue when it opposed petitioner's request for an evidentiary hearing. In fact, at that time, the government took the opposite position. In its request to file a supplemental answer, the government explained that the standards for summary judgment are not the same as those for considering the merits of petitioner's claims. Therefore, the government argued, it should be permitted to supplement its answer to all claims, including those that were the subject of petitioner's summary judgment motion. (ECF No. 606.) When it filed its supplemental answer, which included its opposition to petitioner's motion for an evidentiary hearing, the government never contended that the district judge's summary judgment ruling was preclusive of any issues raised by petitioner's claims. (See ECF No. 612 at 27-38.) In any event, even if the court ignores the government's belated attempt to raise this issue, it fails for the reasons the government itself set out in it request to file a supplemental answer.

In denying a motion for summary judgment, the court examines the evidence in the light most favorable to the opposing party to determine whether there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). That was the

10

standard employed by the district judge in denying petitioner's summary judgment motion. (See ECF No. 600.) Thus, the district judge was required to consider the alibi witnesses' testimony in the light most favorable to the government. In doing so, he found the record did not justify a finding of prejudice under Strickland.

This holding is a far cry from the standard for presenting testimony at an evidentiary hearing – which requires the court to consider whether accepting petitioner's factual allegation as true, he could prevail on his claim. See United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994); 28 U.S.C. § 2255(b). Nor does the district judge's holding dictate a final determination on the ineffective assistance of counsel issue after all of the evidence is heard and weighed. As a general rule, a denial of partial summary judgment does not terminate an action, is not an appealable order, and the issues therein "remain subject to being revised, modified or vacated by the trial court." Zimzores v. Veterans Admin., 778 F.2d 264, 266 (5th Cir. 1985) (quoting 6 Part 2 Moore's *Federal Practice* ¶ 56.20[4], at 56–1234, 56–1235). "A district court has the inherent power to revisit its non-final orders." Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011); see also United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986); Fed. R. Civ. P. 54(b). The government's contention that the district judge's denial of summary judgment for petitioner precludes the taking of testimony from the alibi witnesses is both untimely and unsupported. This motion will be denied.

## IV.    Motion to Exclude Testimony of Dr. Leo

Petitioner intends to present the testimony of Dr. Richard Leo, an expert on the psychological aspects of interrogation techniques and false confessions, in support of his claim that Mojaddidi was ineffective for failing to procure a better false confession expert. (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 6).) The government seeks to exclude Dr. Leo's testimony. (ECF No. 646.) It argues that the trial judge would not have permitted the testimony of a false confessions expert. In the alternative, the government seeks to limit Dr. Leo's testimony to what is contained in his declaration. Petitioner opposes the motion (ECF No. 651) and the government filed a reply (ECF No. 656).

////

## A. Background

Petitioner was interrogated on three occasions.[4] First, when he was returning from Pakistan to the United States on May 30, 2005, it was discovered that he was on the No Fly List. The FBI caused his plane to be turned around and land in Tokyo. He was questioned there by FBI Special Agent ("SA") Futa. He was permitted to continue to the United States that night.

A few days later, on June 3, SAs Aguilar and Wells questioned petitioner at his home in Lodi. Aguilar and Wells asked petitioner to come to the FBI office in Sacramento for further questioning.

The following day, June 4, petitioner was questioned at the FBI offices. Petitioner was interrogated in four waves, over an extensive period of time. The total time, including breaks, for the June 4/5 interrogations was about 14 hours. Only the last two waves of interrogation were videotaped. Petitioner confessed during those final, videotaped interrogations.

At trial, the defense sought to call James Wedick as an expert. Hayat, 710 F.3d at 903. Wedick was a former FBI agent who would have testified primarily about the methods used by the agents who interrogated petitioner. He had never previously qualified as an expert on false confessions. The trial judge excluded Wedick's testimony on the grounds that it would not assist the trier of fact. The Ninth Circuit affirmed that ruling. Id.

Petitioner now seeks to present the testimony of Dr. Richard Leo, a psychologist with experience in police interrogation practices and psychological coercion, in support of his claim that Mojaddidi was ineffective for failing to procure a false confessions expert. (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 6-7).) According to petitioner's summary:

> Dr. Richard Leo is a Professor at the University of San Francisco and formerly an Associate Professor of Psychology and an Associate Professor of Criminology at the University of California, Irvine. He has extraordinarily extensive experience in assessing police interrogation practices, Miranda requirements, the psychology of interrogation and confessions, psychological coercion, police-induced false confessions, and wrongful convictions. Dr. Leo will present informed expert opinions in the present case, which opinions will support elements of defendant's conflict and Strickland claims. Dr. Leo's 2014 declaration

---

[4] This description of the trial testimony about petitioner's interrogations is taken from the Ninth Circuit's factual summary. See United States v. Hayat, 710 F.3d 875, 882-83 (9th Cir. 2013).

> in support of the pending 2255 motion states his qualifications and summarizes the conditions and circumstances that may render a given interrogation procedure unduly coercive and, therefore, unreliable, and generally explains why a false confession expert would have been useful in Mr. Hayat's case. Dr. Leo's testimony will address the same matters and, in addition, will specifically comment on excerpts from the interrogation employed in the present case.

(Id.)

The government seeks to exclude Dr. Leo's testimony on the grounds that the trial judge would likely have excluded that testimony, just as he excluded Mr. Wedick's. (ECF No. 646.) In addition, apparently based on petitioner's statements in his opposition brief that Leo will testify more extensively about petitioner's case than is set out in his declaration, the government argues in its reply brief that this testimony exceeds the scope of Leo's declaration and is therefore inadmissible. (ECF No. 656.)

**B. Analysis**

**1. Would Dr. Leo's Testimony have been Admissible at Trial?**

The government argues the trial judge would have excluded Leo's testimony for several reasons: (a) at the time of trial false confession testimony by experts was frequently excluded, particularly where the confession was videotaped; (b) Mojaddidi elicited substantial evidence at trial from a variety of witnesses to support her argument that the confession was unreliable so expert testimony was not necessary; (c) the expert's testimony would not have meaningfully enhanced the jurors' common-sense evaluation of the circumstances of the confession; and (d) some courts have found Dr. Leo's methodology and conclusions unreliable.

The government bases some of its argument on the trial judge's exclusion of proposed trial expert Wedick's testimony. During trial, the court issued the following tentative ruling, which included his ruling on Wedick's testimony, "[a]ll of the remaining proposed testimony would not assist the trier of fact, that is the jury, with understanding the evidence, or with determining a fact in issue, because it concerns matters within the common knowledge or understanding of the average juror." (RT 3521.) The trial judge cited three Ninth Circuit cases for the proposition that expert testimony is not necessary where the matters are within the understanding of the average juror. They are: United States v. Rahm, 993 F.2d 1405, 1413 (9th

13

Cir. 1993); United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997); and United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 n.3 (9th Cir. 2000). He added that the proposed testimony was also not helpful because "it does not bring to the jury more than the lawyers can offer in argument." (RT 3522.) There, the trial judge quoted In re Air Crash Disaster at New Orleans, 795 F.2d 1233 (5th Cir. 1986), and also stated he was relying on Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).

In its denial of the motion for a new trial, the court held:

> Hayat has not shown Wedick is qualified as an expert in the field of psychology or psychiatry, or otherwise had the qualification to give expert testimony regarding Hayat's alleged susceptibility to suggestion and coercion. Specifically, Hayat has not shown Wedick's qualification to testify about Hayat's intelligence quotient, alleged mental handicap, or social isolation. Nor does the record indicate that Wedick was in a better position than a juror to opine about Hayat's age, language barrier, marriage and/or family status, or any fatigue factor; and Wedick's testimony was unnecessary to inform the jury about Hayat's level of education, health, occupation and employment status, religion and/or belief in God, illiteracy, or experience with the criminal justice system.
>
> . . .
>
> It was also not erroneous to exclude Wedick's testimony as to whether the failure to consider a defendant's vulnerabilities and the use of leading questions generally could lead to an unreliable confession. Such an exclusion was proper under Federal Rules of Evidence 702 and 403 since the testimony would have had little probative value and would not have assisted the jury as contemplated by Rule 702. Ritt, 142 F. Supp. 2d at 1145 (finding that testimony regarding the interrogation techniques used in eliciting the defendant's confession was unnecessary since the jury was able to view a videotape of the confession); Scott v. Tex., 165 S.W.3d 27, 55-57 (Tex. App. 2005) (finding that the exclusion of expert testimony from a social psychologist and criminologist regarding police interrogation techniques and false confessions was not erroneous because it was within the trial court's discretion to determine that the testimony was unreliable and would not assist a trier of fact). The jury was able to hear testimony from the interviewing FBI agents regarding the circumstances of Hayat's confessions and was able to see Hayat's videotaped confessions, and any connection that Hayat wanted Wedick to make between the factual circumstances of Hayat's confessions and factors that lead to unreliable confession could have been and was ultimately made by defense counsel during closing arguments. See U.S. v. Fuentes-Cariaga, 209 F.3d 1140, 1142, n.3 (9th Cir. 2000) (expert testimony not admissible if the testimony is "about an issue within the ken of the jury's knowledge"); In re Air Crash Disaster at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986) (Expert testimony must "bring

14

to the jury more than the lawyers can offer in argument, otherwise the expert testimony does not assist the trier of fact to understand the evidence or to determine a fact in issue."); Maine v. MacDonald, 718 A.2d 195, 198 (Me. 1998) ("[T]he court reasonably could have concluded that [the expert's] testimony would do little more than reinforce a concept already well within the jurors' grasps, namely, that people sometimes lie to protect those close to them.").

Moreover, even if the exclusion of Wedick's testimony was improper, it was harmless because the jury ultimately heard, through other testimony and closing arguments, all of the testimony that Wedick would have offered. Therefore, Hayat is not entitled to a new trial based on the exclusion of Wedick's testimony.

(ECF No. 482 at 50, 51-55 (footnotes omitted).) To summarize, the trial judge found Wedick had nothing to offer that jurors could not see, hear, and understand for themselves. The Ninth Circuit agreed. 710 F.3d at 903. Among other things, the court noted that it was not "clear that Wedick has particular expertise in the field of false confessions." Id.

In Rahm, one of the cases upon which the trial judge relied, the Ninth Circuit considered the "proper subject" inquiry when it examined a district court's exclusion of an expert. The proper subject inquiry is "generally focused upon whether the expert testimony improperly addresses matters within the understanding of the average juror. We have stated that expert testimony should not invade[ ] the province of the jury." 993 F.2d at 1413 (internal quotation marks and citations omitted). The court then found that the district court improperly excluded the testimony of an expert regarding the defendant's perceptual difficulties, which had been diagnosed through psychological tests. One of the questions at trial was whether the defendant knew money in her possession was counterfeit. The court noted that the interpretation of psychological tests was specialized knowledge that average jurors would not have. Id. at 1414. The defendant's perceptual difficulties were not "general human deficiencies that the jury could understand from their own experience." Id.

The government argues that because petitioner's confession was videotaped, one of the factors upon which the trial judge relied, jurors could determine for themselves whether petitioner's confession was voluntary. However, in only one of the cases cited by the government did the court explicitly rely on the availability of a videotaped confession. See Ritt v. Dingle, 142

15

F. Supp. 2d 1142, 1145 (D. Minn. 2001).  Further, the trial judge in the present case relied on that fact in the context of Wedick's proposed testimony.  He did not rule that the fact the jury was able to view a videotape of part of the interrogation precludes any sort of expert testimony on the validity of the confession.

As evidenced by Dr. Leo's qualification as an expert in hundreds of cases, many courts, both before and at the time of petitioner's trial, accepted expert testimony on the voluntariness of a confession.  See, e.g., United States v. Belyea, 159 F. App'x 525, 529-30 (4th Cir. 2005) (district court erred in excluding expert testimony about factors that correlate with false confessions); United States v. Hall, 93 F.3d 1337, 1344-45 (7th Cir. 1996) (district court erred in failing to undertake full Daubert inquiry regarding the admissibility of a psychologist's testimony on false confessions; district court's ruling "overlooked the utility of valid social science"); United States v. Shay, 57 F.3d 126, 133 (1st Cir. 1995) (district court erred in excluding expert testimony regarding defendant's mental disorder and the reliability of his statements to police); United States v. Roark, 753 F.2d 991, 994-95 (11th Cir. 1985) (district court erred in excluding psychologist's testimony regarding defendant's confession; testimony would have included defendant's susceptibility and conditions of the interrogation room).  The fact that some courts may have exercised their discretion not to permit such testimony does not require a finding that Dr. Leo's testimony would not have been permitted at the trial of this case.  See United States v. Antone, 412 F. App'x 10, at *1 (9th Cir. 2011) (without analysis, court holds that district court did not abuse its discretion in excluding an expert's testimony on false confessions where testimony met Daubert's reliability standards, but district court determined the testimony could "usurp the jury's function of resolving the relative credibility of the witnesses").

In the present case, there is no question that Dr. Leo has specialized knowledge that is not within an average juror's bank of knowledge or experience.  According to his declaration, he is a professor of psychology and criminology; his specializations include research on the psychology of interrogations and confessions.  (ECF No. 637-12.)  He has been qualified as an expert 270 times in state and federal courts, including 119 times in disputed confession cases prior to the end of 2005, around the time he could have been retained by Mojaddidi.

16

There is also no question that Dr. Leo's qualifications bear no resemblance to the qualifications of James Wedick, a retired FBI agent who had never qualified as an expert on false confessions. The fact a few state courts did not find Leo qualified to testify has almost no relevance to the question of whether he would have been permitted to testify at trial in this case or whether he should be permitted to testify at the evidentiary hearing. The government is free to argue that the failure to qualify in some cases should bear on the weight the court gives Dr. Leo's testimony. Finally, there is no question that petitioner's "confession was the central piece of evidence proffered against him at trial." (Order on Mot. for Summ. J. (ECF No. 600 at 17).) Dr. Leo's testimony is highly relevant to petitioner's ineffective assistance of counsel claim that Mojaddidi failed to obtain an appropriate false confession expert.

### 2. Should the Court Limit the Scope of Dr. Leo's Testimony?

The government argues petitioner is intending to present testimony from Dr. Leo that exceeds that covered in his declaration. The government relies on Federal Rule of Civil Procedure 26(a)(2) as the basis for this argument. Rule 26(a)(2) specifies the requirements for disclosing the testimony of experts who will testify at trial. However, Rule 26 is a general civil discovery rule that is not automatically applicable in a habeas or § 2255 proceeding. See Harris v. Nelson, 394 U.S. 286, 293-94 (1969). "[H]abeas corpus petitions . . . are not governed by the Federal Rules of Civil Procedure unless the court authorizes their use." Blaurock v. Kansas, No. 15-3274-DDC, 2016 WL 5410828, at *1 (D. Kan. Sept. 28, 2016) (citations omitted).

Rule 12 of the Rules Governing Section 2255 Proceedings states that the Federal Rules of Civil Procedure, to the extent they are not inconsistent with statutes for the habeas rules, "may be applied to a proceeding under these rules." (Emphasis added.) Rule 12 does not, as the government contends in its reply, "require compliance with the Federal Civil Rules." (Reply (ECF No. 656) at 7.) In fact the Advisory Committee Notes to Rule 12 show otherwise. Those Notes instruct the reader to look to the notes for the parallel rule for § 2254 Cases. In the § 2254 Rule's Notes, the Advisory Committee is clear that the rule is intended to allow the court "to use any of the rules of civil procedure (unless inconsistent with these rules of habeas corpus) when in its discretion the court decides they are appropriate under the circumstances of the particular

17

case.[5]" The government's adamant reliance on the applicability of Rule 26 is unsupported by any authority.

Further, in the court's order scheduling the evidentiary hearing, the exchange of information regarding witnesses is described as follow: "The parties shall each file a brief by September 18, 2017, describing the witnesses who will be called at the evidentiary hearing and the evidence those witnesses intend to present." (ECF No. 621 at 2.) The court did not specify that Rule 26 standards for expert testimony would apply or otherwise distinguish expert testimony from other testimony.

The question, then, is whether petitioner adequately explained Dr. Leo's expected testimony. The government contends it learned for the first time in petitioner's opposition brief that Leo will testify beyond the scope of his declaration. In his opposition, petitioner states that by the time Leo testifies, he will have reviewed the tapes and transcripts of the interrogations of petitioner. (ECF No. 651 at 15.) Leo will then "testify about numerous factors that can lead to unreliable confessions, and the presence or absence of such factors in this case." (Id.) However, this is not the first time the government was informed that Leo's testimony would go beyond the matters explicitly stated in his declaration. In his Witness List filed on September 18, petitioner stated that "Dr. Leo's testimony will address the same matters [as in his declaration] and, in addition, will specifically comment on excerpts from the interrogation employed in the present case." (Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 7).)

The court finds the government has established no basis to exclude Dr. Leo's testimony. Dr. Leo is well qualified and it is highly likely his testimony would have been permitted at trial. Further, he may testify to matters beyond those specifically set out in his declaration. The government's motion to exclude or limit Dr. Leo's testimony will be denied.

## V.      Motion to Disqualify Attorney Dennis Riordan or Exclude his Testimony

Petitioner intends to put on the testimony of his lead attorney Dennis Riordan, primarily about statements Mojaddidi made to him that are inconsistent with her expected testimony.

---

[5] The parallel rule for § 2254 cases was Rule 11 and is now Rule 12. Rules Governing Section 2254 Cases.

(Petr.'s Evid. Hrg. Witness List (ECF No. 637 at 8).)  In addition, in his summary of Riordan's testimony, petitioner states that he seeks to have Riordan's legal advice to Mojaddidi considered as expert testimony.  (Id.)  However, at the hearing on the government's motion, petitioner's counsel informed the court that petitioner withdraws any request that Riordan's testimony be considered expert testimony.  Petitioner seeks only to have Riordan testify as a percipient witness, in addition to acting as petitioner's lead counsel.

The government moves to disqualify Riordan as counsel or exclude him as a witness for petitioner under the witness-advocate rule of the ABA Rules of Professional Conduct.  (ECF No. 648.)  Petitioner opposes the motion (ECF No. 650) and the government filed a reply (ECF No. 656).

## A.  Legal Standards

Local Rule 180(e) describes the standards of professional conduct for attorneys practicing in this district.  It states:

> Every member of the Bar of this Court, and any attorney permitted to practice in this Court under (b), shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and court decisions applicable thereto, which are hereby adopted as standards of professional conduct in this Court. In the absence of an applicable standard therein, the Model Code of Professional Responsibility of the American Bar Association may be considered guidance. No attorney admitted to practice before this Court shall engage in any conduct that degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice.

As the government concedes, the witness-advocate rule found in the California Rules of Professional Conduct applies only to jury trials.  It states:

> A member shall not act as an advocate before a jury which will hear testimony from the member unless:
>
> (A) The testimony relates to an uncontested matter; or
>
> (B) The testimony relates to the nature and value of legal services rendered in the case; or
>
> (C) The member has the informed, written consent of the client. If the member represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee

of the head of the office by which the member is employed and shall be consistent with principles of recusal.

Rule 5-210, Member as Witness, Cal. Rules of Prof. Conduct.  In fact, a "Discussion" note to the rule states that it "is not intended to encompass situations in which the member is representing the client in an adversarial proceeding and is testifying before a judge."

Because the California rule is inapplicable, the government argues that, per Local Rule 180(e), the court should look to the ABA's Model Rules.  Rule 3.7 is entitled "Lawyer as Witness."  It states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The government cites a number of cases in which courts barred attorneys who would be testifying as witnesses.  (See ECF Nos. 648 at 3-5 and 656 at 2-3.)  Almost every case cited involved a jury trial.  The one exception is a California Court of Appeal case in which the court affirmed the disqualification of a child's paternal grandfather as the attorney for the father in a custody dispute.  See Kennedy v. Eldridge, 201 Cal. App. 4th 1197, 1209-10 (2011).  The court focused on the fact that the grandfather was the "head of a household that is the subject of controversy and conflicting averments" and would likely end up in a situation of conflict between his duty to testify truthfully and his duty to his client, his son.  The court recognized the "awkward and conflicting duties" facing the grandfather in this situation.  Other California courts have adopted the reasoning in Kennedy for cases involving family member witness/attorneys.  See Conservatorship of Jonathan S., No. D069621, 2016 WL 6778803 (Cal. Ct. App. Nov. 16, 2016); Stovall v. Cox, No. A146084, 2016 WL 1085392 (Cal. Ct. App. Mar. 21, 2016).

20

The court's research has uncovered two habeas cases in which courts considered the question of whether an attorney who may be a witness in the habeas case should be disqualified under rules similar or identical to the ABA's witness-advocate rule. The courts focused on the absence of a jury in a habeas evidentiary hearing and the necessity of the lawyer's testimony. In Darnell v. Merchant, No. 17-cv-3063-EFM-TJJ, 2017 WL 2618823 (D. Kan. June 16, 2017), the court considered whether the prosecutor at trial should be disqualified from representing the government on habeas because the prosecutor could end up being a witness to what occurred at trial. The court looked to the following factors in considering whether to disqualify counsel:

> In deciding a motion to disqualify counsel, the trial court balances several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process. "The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct." A motion to disqualify counsel deserves serious, conscientious, and conservative treatment.

2017 WL 2618823, at *2 (footnotes omitted).

The court also recognized that "[o]ne of the strongest rationales for this lawyer-witness rule is to prevent jury confusion over the separate roles of an advocate and a witness." Id. The court focused on the fact that any habeas proceedings would not be heard by a jury and "the rule should not apply to non-jury proceedings." Id. at 5. However, in concluding, the court also noted that the attorney was not likely to be a witness. Id. See also Crowe v. Smith, 151 F.3d 217, 233-34 (5th Cir. 1998) (noting that "the only justification for the attorney testimony rule that might be viewed as affecting the rights of the opposing party is that derived from the fear that the jury will either accord such testimony undue weight, or will be unable to distinguish between the attorney's testimony, offered under oath, and his legal argument, offered in rhetorical support of his client's case").

**B. Analysis**

In the present case, the only rationale cited by the government for disqualifying Riordan is that his appearance as both attorney and witness will turn the hearing into a "farce." The

21

government does not explain how they will be prejudiced by Riordan's dual roles. Further, petitioner explains that his counsel is taking precautions to avoid the appearance that Riordan is simultaneously acting as both percipient witness and attorney. (See ECF No. 650 at 2.) Attorney Boersch will cross-examine Mojaddidi about any conflicts between her testimony and her prior conversations with petitioner's attorneys Riordan and Horgan. In addition, Riordan will not draft written arguments or orally argue any matter related to his credibility. These measures address all of the government's "farce" arguments for Riordan's percipient witness testimony. Because Riordan's percipient testimony may be important to considering both the issues of conflict of interest and Mojaddidi's reasonableness, the court will allow him to so testify and remain as petitioner's counsel. The government's motion to disqualify Riordan or exclude his testimony will be denied.

The government asks that the court require petitioner to sign a waiver under ABA Rule 3.7. The rule does not appear to require such a waiver. The court will leave it to petitioner's counsel's discretion whether a waiver is appropriate.

## VI. Motion to Exclude Testimony of Strickland Experts

Petitioner identified three "Strickland experts" to testify in support of his contentions that Mojaddidi acted unreasonably in numerous respects, amounting to ineffective assistance of counsel.[6] (ECF No. 637.) He summarized each expert's testimony as follows:

1. Doron Weinberg

> Attorney Doron Weinberg is a highly experienced San Francisco criminal defense attorney who has been practicing in the state and federal courts since 1972. Mr. Weinberg will present informed expert testimony bearing on many, if not all, aspects of defendant's claims alleging conflict of interest as well as prejudicial deficient performance under Strickland. That testimony will be based on relevant portions of the transcript of defendant's 2006 trial, the 2014 deposition of Ms. Mojaddidi, and all pleadings and exhibits in this pending 2255 action.

(ECF No. 637 at 5.)

---

[6] While the court uses the shorthand term "Strickland experts," it understands that petitioner may seek to have his experts testify not just about the reasonableness of counsel's conduct but also about the standard of care concerning the conflict of interest issue.

2.   Dan Broderick

> Attorney Dan Broderick is another highly experienced criminal defense attorney who served as the Federal Defender for the Eastern District of California from 2006 until 2012, when he retired. He is intimately familiar with the qualifications required of an attorney to competently defend a complex federal criminal matter in this district, such as the prosecution of Mr. Hayat. Like Mr. Weinberg, Mr. Broderick will present informed expert testimony concerning many, if not all, elements of defendant's conflict and Strickland claims.

(Id. at 5-6.)

3.   John Cline

> Attorney John Cline is also a highly experienced criminal defense attorney who has been practicing in the state and federal courts since 1986. Based on his practice and experience, he is extremely familiar with the Classified Information Procedures Act ("CIPA"), including the reasons why defense counsel in defendant's case involving CIPA would absolutely need to apply for and obtain security clearance to meaningfully participate in related court proceedings and otherwise render competent assistant to the defendant. Mr. Cline will present informed expert opinions concerning trial counsel's failures in this regard and how they implicate defendant's allegations of conflict of interest and of prejudicial deficient performance under Strickland.

(Id. at 6.)

The government moves to exclude the testimony of these Strickland experts on the grounds that they are not necessary because the court is qualified to understand the legal analysis required by Cuyler and Strickland and because the experts have not reviewed the entire record before rendering their opinions. (ECF No. 647.) Petitioner opposes the motion (ECF No. 651) and the government filed a reply (ECF No. 656).

**A.  Legal Standards**

A court reviewing an ineffective assistance claim should consider counsel's performance in the context of then "'prevailing professional norms,' which include[ ] a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 688–89 (1984).). The testimony of an expert regarding the standard of care at the time of trial is obviously relevant to an ineffective assistance of counsel claim. Nonetheless, some judges have

23

declined to hear the testimony of <u>Strickland</u> experts regarding the general standard of care where that standard is available through common sense, experience, and research.  <u>See</u> <u>Hovey v. Ayers</u>, 458 F.3d 892, 910 (9th Cir. 2006) (not error for district court to decline to hear testimony of <u>Strickland</u> experts); <u>Heishman v. Ayers</u>, 621 F.3d 1030, 1042 (9th Cir. 2010) (same).  However, the Ninth Circuit in <u>Hovey</u> also noted that the expert's testimony "may have provided additional perspective."  458 F.3d at 910.  While the court found the district judge did not abuse her discretion in refusing to hear the experts' testimony, the Ninth Circuit made clear that their professional opinions had value.

In other cases as well, the Ninth Circuit noted that the testimony of <u>Strickland</u> experts is helpful in resolving ineffective assistance of counsel claims.  <u>See</u> <u>Hamilton v. Ayers</u>, 583 F.3d 1100, 1130 (9th Cir. 2009) (district court clearly erred in relying on testimony of defendant's counsel and rejecting testimony of <u>Strickland</u> expert re standard of care in 1982 in death penalty case); <u>Allen v. Calderon</u>, 395 F.3d 979, 1001-02 (9th Cir. 2005) (in reviewing reasonableness of counsel's conduct, Ninth Circuit cites to opinion of <u>Strickland</u> expert, who testified at the evidentiary hearing before the district court, for the standard of care); <u>Jackson v. Calderon</u>, 211 F.3d 1148, 1162 (9th Cir. 2000) (noting the expert testimony at the evidentiary hearing before the district court regarding competent counsel's duty at the penalty phase of a capital case); <u>Ainsworth v. Calderon</u>, 138 F.3d 787, 791 (9th Cir. 1998) (no abuse of discretion in permitting testimony of <u>Strickland</u> expert); <u>Sanders v. Ayers</u>, No. 1:92-cv-05471-LJO, 2008 WL 4057820, at *2 (E.D. Cal. Aug. 28, 2008) (district judge denied motion in limine to exclude testimony of <u>Strickland</u> experts in death penalty habeas case).

Case law also establishes that there are limitations on the testimony of <u>Strickland</u> experts.  First, courts have held that the experts should not opine on the ultimate legal issues.  For example, the experts should not render an opinion on whether defense counsel acted unreasonably under the <u>Strickland</u> standard and whether those actions prejudiced the defense.  Nor may an expert opine that counsel had a conflict of interest as defined by <u>Cuyler</u>.  Rather, the experts may opine about the standard of care and resources available for a criminal defense attorney in a similar case at the time of trial.  <u>See</u> <u>Earp v. Cullen</u>, 623 F.3d 1065, 1075 (9th Cir. 2010) (district

24

court did not err in preventing expert from opining on trial counsel performance; district court permitted expert to testify about what competent counsel would have done in that type of case at that time). In Bolin v. Chappell, No. 1:99-cv-05279 LJO, 2012 WL 6004722, at **3-5 (E.D. Cal. Nov. 30, 2012), Judge O'Neill considered whether a Strickland expert should testify in a habeas evidentiary hearing. He held that the testimony was admissible regarding "the applicable legal standard at the time of Bolin's trial." Judge O'Neill specifically held that it was not necessary for the expert to render his opinion about whether the petitioner's trial attorneys were constitutionally ineffective. "That is a conclusion that requires judicial determination based on the relevant standard of care and attorney conduct." Id.

Despite these limitations, experts may be given hypothetical questions that mirror the facts of the case so that their testimony is helpful. The Ninth Circuit in Hovey recognized that this sort of specific expert testimony could be useful. The district court in Hovey had determined the Strickland expert testimony was not necessary because it would just provide the general standards of care. See 458 F.3d at 910-11. While the Ninth Circuit held the district court did not abuse its discretion in excluding that testimony, the Circuit court noted that:

> The district court may have underestimated the potential value of the experts' testimony. Each proffered expert had reviewed the state court opinions, the transcripts of the trial, and the briefs. Thus their professional opinions were based not on their expertise in general standards of representation, but instead on thorough and detailed research of Hovey's particular situation.

Id. at 911.

To summarize, a question that sets out the specific circumstances of a case, and then asks what a reasonably competent attorney would have done, or not done, in this situation is appropriate. However, a question that asks if defense counsel herself acted reasonably is not appropriate.

Case law is very clear, and this is more obvious, that Strickland experts may not testify about the prejudice component of Strickland. See Bolin, 2012 WL 6004722, at *5 (The determination of prejudice as a result of attorney incompetence is "*always* for the Court [to make] based on the evidentiary record as well as argument of counsel." (Emphasis in original.)). In

other words, they may not testify that, had defense counsel acted reasonably, it would have made a difference in the verdict.  Finally, and again this should be obvious, <u>Strickland</u> experts should not testify about the legal standards.  Petitioner has counsel to brief the legal issues.

**B.  Analysis**

Testimony from experienced criminal defense attorneys regarding the standard of care would be of assistance to this court.  In fact, in the order granting the evidentiary hearing, this court accepted that <u>Strickland</u> expert testimony would be helpful to "as to why a non-conflicted trial counsel would have pursued" the strategies that Mojaddidi did not pursue.  (ECF No. 616 at 6-7.)  In addition, the court noted that expert testimony "establishing the relevant standard in the present context" would be "useful."  (<u>Id.</u> at 7-8.)  Therefore, the court will permit the testimony of the <u>Strickland</u> experts, with some provisos.

First, the court expects that the testimony of the <u>Strickland</u> experts will not be unnecessarily redundant.  Second, the court expects the <u>Strickland</u> experts to limit their testimony to what a reasonably competent attorney would have done in this case.  The declarations petitioner provided for these experts, in particular the declarations for Mr. Weinberg and Mr. Broderick, stray beyond the limitations on <u>Strickland</u> expert testimony described above.

Finally, one basis for the government's motion is that each <u>Strickland</u> expert appears to have reviewed only part of the record.  It is unclear to the court why this fact would be a basis for excluding the testimony of these experts as opposed to a basis for cross-examination and argument in final briefing.  Further, for the reasons set forth above in the discussion of Dr. Leo, the court will not limit the <u>Strickland</u> experts' direct testimony to the statements made in their declarations.  As the court noted previously, because the evidentiary hearing will be heard by a judge, not a jury, and because the parties will have the opportunity to brief the merits of each of the claims which are the subject of the evidentiary hearing, there is little risk of confusion on these grounds.  To conclude, the court will deny the government's motion to exclude the testimony of the <u>Strickland</u> experts.

////

////

For the reasons set forth above, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. The government's motion to exclude the testimony of Mr. Aaser (ECF No. 641) is granted.

2. The government's motion to exclude the expert testimony of Dr. Haykel (ECF No. 642) is denied; its motion to exclude the expert testimony of Imam Anwar (ECF No. 642) is granted. Mr. Anwar may testify as a lay witness.

3. The government's motion to exclude the testimony of the alibi witnesses (ECF No. 644) is denied.

4. The government's motion to exclude the expert testimony of Dr. Leo (ECF No. 646) is denied.

5. The government's motion to disqualify attorney Dennis Riordan or exclude his percipient witness testimony (ECF No. 648) is denied.

6. The government's motion to exclude the expert testimony of Mr. Weinberg, Mr. Broderick, and Mr. Cline (ECF No. 647) is denied.

Dated: December 26, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/hayat MILs.or

27