MARTHA BOERSCH (SBN 126569)
mboersch@boerschshapiro.com
BOERSCH SHAPIRO LLP
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 500-6640
Facsimile: (415) 967-3062

Attorneys for Petitioner
HAMID HAYAT

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Respondent/Plaintiff,<br><br>  v.<br><br>HAMID HAYAT,<br><br>     Petitioner/Defendant. | Case No. 05-cr-0240-GEB-DB<br><br>**DEFENDANT HAMID HAYAT'S REPLY BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI**<br><br>Judge: Magistrate Judge Deborah Barnes |

**INTRODUCTION**

The government devotes a considerable portion of its Opposition to a remarkably personal attack on Dennis P. Riordan, Petitioner's lead counsel, who testified before this Court in the recent evidentiary hearing. (Opposition [hereafter Opp'n.] at 41-62.) The overheated attack on Mr. Riordan is considerably disproportionate to the importance of Mr. Riordan's testimony in resolving the issues before the Court.  Even without Mr. Riordan's testimony, the record clearly demonstrates the conflict of interest that plagued Ms. Mojaddidi's representation of Hamid and that resulted from her complete lack of experience.  And while Mr. Riordan's testimony is admissible to impeach Ms. Mojaddidi's recent assertions of independent decision-making, as the government concedes (Opp'n at 42), the record itself impeaches her assertions.  *See* Reply at 7.[1]  Indeed, as petitioner has previously argued, Mr. Riordan's testimony as to what Ms. Mojaddidi stated to him while they served as co-counsel for petitioner in 2006 and 2007 could be entirely excised from the hearing record, and the Court still would have more than enough evidence to support every factual finding that the petitioner has urged upon it.

Most of the government's attacks on Mr. Riordan rest on innuendo and hyperbole and do not merit a response.  And while it would be easy to respond in kind – by leveling counter-attacks at government attorneys who have fought at every step to avoid disclosing the truth and to keep an innocent man in prison – that too would be a distraction and a waste of this Court's time.  Because in the final analysis, this case is not about Dennis Riordan, and it is not about the government attorneys.  This case is about Hamid Hayat and the tragic incompetence of his trial attorney, Wazhma Mojaddidi.

//
//
//
//

---

[1] This Court does have discretion under Fed. R. Evid. 807 to consider Mr. Riordan's testimony for the truth of the matter asserted.

1    DEFENDANT HAMID HAYAT'S REPLY BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

**ARGUMENT**

**I.    MR. RIORDAN'S TESTIMONY IS WELL-CORROBORATED BY THE RECORD AND THE TESTIMONY OF OTHER WITNESSES, PARTICULARLY THAT OF MS. MOJADDIDI**

Despite the limited nature of Mr. Riordan's testimony, the government devotes over 20 pages of its opposition to claims that his testimony, indeed all of his advocacy, has been "infected," "pollut[ed]," and "taint[ed]" by his "heavily interested role as Hayat's chief advocate" (*Id.* at 54:7-9; 57:11-13; 58:2-6; 5:25-26), a self-interest not financial but psychological in nature. But Mr. Riordan's 2007 averments are supported by the record in this case, the testimony of independent witnesses, critical portions of Ms. Mojaddidi's own testimony, and common sense.

Ms. Mojaddidi's testimony at the hearing establishes that she spoke willingly, openly, and candidly with Mr. Riordan in their post-trial conversations about the subjects that he addressed in the declaration he filed in 2007 in support of petitioner's initial 2255 motion.  She testified that when talking to Mr. Riordan she "provided information," "voiced frustrations," "made comments about…how things could have been done differently, because, you know, hindsight is always 20/20." (IV TR 710:8-13). She described the period of those discussions as "a difficult and emotional time." *Id.*  Ms. Mojaddidi also conceded that her recollection of the events worsened with the passage of time. Reply at 7.

Every assertion in Mr. Riordan's declaration and testimony is supported and corroborated by evidence in the record, as follows:

1.    Mr. Riordan's declaration asserts that Ms. Mojaddidi told him that "she realized that, given her complete lack of experience as a criminal lawyer, she alone would not be capable of providing a competent defense to Hamid Hayat." (Ex. B at 4:2-4). Consistent with that assertion, Ms. Mojaddidi herself has testified that she could not have represented Hamid alone and needed to learn "on-the-job." (IV TR 705:7-9).

2.    Mr. Riordan's declaration asserts that Ms. Mojaddidi's "decision to nonetheless represent Hamid Hayat was based on her perception that she would be a member of a team preparing a joint defense led by Mr. Griffin, counsel for Umer Hayat." (Ex. B at 4:3-6).

2    DEFENDANT HAMID HAYAT'S REPLY BRIEF
REGARDING THE TESTIMONY OF DENNIS
RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

Again, Ms. Mojaddidi testified to the same effect at her deposition. (Ex. FFF at 22:22-23).

3. Mr. Riordan's declaration asserts that Ms. Mojaddidi decided that she could not bring Mark Reichel on as co-counsel, because Mr. Griffin told her that doing so would mean that he could no longer mentor her, and she knew that she needed his assistance if she was going to continue as petitioner's counsel. (Ex. B at 10:15-11:1). Ms. Mojaddidi testified at her deposition that indeed ending Mr. Griffin's mentorship was "something he did say to me." (Ex. FFF at 100:13-14).

4. Mr. Riordan's declaration states that Mr. Griffin controlled the decision whether to file pretrial motions. (Ex. B at 12-14). The trial record makes clear that it was Mr. Griffin who, in pursuit of his futile speedy trial strategy, made the decision not to file any pretrial motion, a decision in which Ms. Mojaddidi acquiesced. (7/15/05 RT at 2:1-10). Likewise, the testimony of Mark Reichel establishes that it was Mr. Griffin who effectively blocked his entry into the case by declaring as a condition of Reichel's entry that there would be no motions filed on petitioner's behalf that could delay setting a trial date.

5. Mr. Riordan's declaration states that that no investigation of possible exculpatory witnesses in Pakistan was conducted during the first two months following the defendants' indictment in June of 2005 by the defense team because Mr. Griffin was focused on creating his speedy trial claim, as Mr. Griffin was confident that the government would not be prepared to try the case within the required statutory time limits. After the district court' granted, over defense objection, an initial continuance of the trial date in August, 2005, Mr. Griffin stated that "he believed the court had erred in its ruling, and it would be important to preserve the speedy trial issue for future proceedings by opposing any further government requests for continuances and by declining to seek a continuance on the part of the defendants." (Ex. B at 6:2-10).  Ms. Mojaddidi testified at her deposition that she and Mr. Griffin continued to pursue the

3   DEFENDANT HAMID HAYAT'S REPLY BRIEF
REGARDING THE TESTIMONY OF DENNIS
RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

speedy trial strategy up to the date of trial (Ex. FFF at 171:4-20), and at the hearing that the speedy trial strategy "was a big issue" in not seeking alibi witnesses. (IV TR 735: 14-16).

6.  Mr. Riordan's declaration states that Ms. Mojaddidi said that "she had discussed with Mr. Griffin her belief that the defense should move the court to order the government to provide visas to prospective witnesses in Pakistan so that they could travel to Sacramento for the purposes of testifying as defense witnesses." Mr. Griffin told her that "such a move would be futile, as the issuance of the visas was within the purview of a different branch of government that would be uncooperative." (Ex. B at 8:4-9). At her deposition, Ms. Mojaddidi testified that she had raised the issue of obtaining visas with Mr. Griffin, and "there was an understanding at the conclusion of that discussion that it would be difficult." (Ex. FFF at 38:21-39:4).

7.  Mr. Riordan's declaration states that when Mr. Riordan and Ms. Mojaddidi discussed using Rule 15 depositions to obtain testimony from witnesses in Pakistan, Ms. Mojaddidi did not know of the existence of Rule 15 depositions, and that Mr. Griffin had not informed her of their availability. (Ex. B at 8:15-16). At both her deposition and the evidentiary hearing, Ms. Mojaddidi conceded that she was unaware of Rule 15 depositions during petitioner's trial. (Ex. FFF at 39:5-11; IV TR 737:1-6).

8.  Mr. Riordan's declaration states that Mr. Griffin insisted as a condition of working with Ms. Mojaddidi that, while significant strategic and tactical matters decisions would be discussed between them, the final decision-making power over such decisions in both the cases of Umer Hayat and Hamid Hayat would rest with him. Ms. Mojaddidi agreed to that condition, and while she and Mr. Griffin reached a consensus on various matters made during the trial of their clients, Mr. Griffin retained the final decision. (Ex. B at 4:6-12).  This, of course, was the assertion by Mr. Riordan that Ms. Mojaddidi most vehemently denied during her deposition and hearing testimony, continually claiming that her decision-making during her representation of petitioner, while always made

4    DEFENDANT HAMID HAYAT'S REPLY BRIEF<br>
REGARDING THE TESTIMONY OF DENNIS<br>
RIORDAN AND WAZHMA MOJADDIDI<br>
Case No.: 05-cr-0240-GEB-DB

jointly with Mr. Griffin and taking in account his advice, was always independent of his decision-making. Yet she admitted at her deposition that without any criminal law or trial experience, she needed to rely "for a lot of things" on Mr. Griffin, including his mentoring of her so that she could "learn on the job." (Ex. FFF at 24:7-10, 20-24). Under their "joint defense" arrangement (*Id.* at 22:22-23), Mr. Griffin participated in strategic and tactical decisions affecting Ms. Mojaddidi's client "every day." (*Id*. at 132:9-13). When Mr. Griffin made decisions, Ms. Mojaddidi would later do research to see if she could make sense of them so as not to "blindly agree on everything." (*Id*. at 24:14-16). Common sense dictates that an attorney in Ms. Mojaddidi's position relative to Mr. Griffin, and one with no criminal law or federal trial experience, much less experience defending allegations of terrorism involving classified information, cannot have exercised what objectively could be classified as independent judgment in strategic and tactical decision-making. James Wedick, who served as Johnny Griffin's investigator, observed during the many defense conferences he attended that "Mr. Griffin and Ms. Mojaddidi were acting as a team defending both defendants." Based on his experience as a lead FBI agent in criminal trials, it was clear to Wedick that the lead lawyer on the team was Griffin, as "all decisions went through him." (III TR 589: 10-18).

Finally, Mr. Riordan's testimony is further corroborated by the fact that Ms. Mojaddidi received a copy of Mr. Riordan's 2007 motion to vacate on September 9, 2007, with a cover email stating that the pleading would be filed the following day after petitioner's sentencing hearing. (*See* Exs. A and D).  Both Mr. Riordan and Ms. Mojaddidi appeared jointly the next day at the sentencing hearing on September 10th.  As Mr. Riordan's 2014 declaration states, Ms. Mojaddidi raised no objection to the contents of the 2255 motion, which was then filed with the district court immediately after the sentencing hearing. (Ex. A at 1:28-2:14).

In sum, Mr. Riordan's testimony is wholly corroborated by the record and fully impeaches Ms. Mojaddidi's assertions of independent decision-making. Those assertions are the *sine qua non* of the government's Opposition to petitioner's claims.

5    DEFENDANT HAMID HAYAT'S REPLY BRIEF
REGARDING THE TESTIMONY OF DENNIS
RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

## II.     THE GOVERNMENT'S ACCUSATIONS OF UNETHICAL BEHAVIOR BY MR. RIORDAN ARE UNFOUNDED

The government claims that Mr. Riordan breached some undefined ethical duty to Ms. Mojaddidi by continuing to work with her on the new trial motion, while "surreptitious[ly]" gathering information for a Sixth Amendment claim. (Opp. at 43:20).  The government's contention lacks any basis in law or fact.

As a matter of law, Mr. Riordan's duty of loyalty is to Hamid Hayat, not to Ms. Mojaddidi. *See Strickland v. Washington,* 466 U.S. 668, 688 (1984) ("Counsel's function is to assist the defendant, and hence counsel owes *the client* a duty of loyalty, a duty to avoid conflicts of interest" (emphasis added)).  His particular duty, as appellate counsel, is to consider "all issues that might affect the validity of the judgment of conviction or sentence." ABA Criminal Justice Standards for the Defense Function, Standard 4-9.2(b). He has an obligation, as appellate counsel and as post-appellate counsel, to seek the cooperation of trial counsel in the evaluation of potential appellate issues.  *Id*., Standard 4-9.2(a) and Standard 4-9.5(c). As post-appellate counsel, "[i]f [he] is satisfied after appropriate investigation and legal research that another defense counsel who served in an earlier phase of the case did not provide effective assistance," he "should not hesitate to seek relief for the client." *Id*., Standard 4-9.6(a).

Mr. Riordan ethically and honorably fulfilled all of his duties as appellate and post-appellate counsel.  Mr. Riordan met with Ms. Mojaddidi to discuss and evaluate the potential issues for appeal and post-appeal.  He was open and candid with Ms. Mojaddidi concerning a possible claim of ineffective assistance of counsel.  She herself has testified that she understood that such a motion could be filed. (Ex. FFF at 95:19-96:5). She cooperated with Mr. Riordan's investigation of the Sixth Amendment claim by having discussions in which Mr. Riordan asked her questions and she gave answers, always endeavoring to be honest. (*Id*. at 96:6-17). Based on his discussions with her and his review of the record he concluded that "this was a situation in which Ms. Mojaddidi and Mr. Griffin may have, essentially, engaged in the representation of both Hayats." (IV TR 792:6-9).  This "raised the possibility that there was, or had been, a multiple – a representation of – multiple representation

6     DEFENDANT HAMID HAYAT'S REPLY BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI Case No.: 05-cr-0240-GEB-DB

of defendants.  And from an appellate lawyer's point of view, that's a conflict issue." (*Id.* at 792:15-19). He further concluded, based on his discussions with Ms. Mojaddidi and his independent review of the record, that he "had to make an effort to raise the ineffective assistance of counsel claim in the district court on the possibility that we would then be able to raise it on appeal." (*Id.* at 810:22-25). Because Mr. Riordan was going to serve as appellate counsel, he had an obligation, as the ABA Standards note, "to look at all the possible issues that might be raised in an appellate court." (*Id.* at 792:19-21).

The government's suggestion that, because Ms. Mojaddidi was appointed by Judge Burrell for post-trial proceedings on the condition that Mr. Riordan serve as her mentor, Mr. Riordan owed *her* a duty of loyalty is way off base.  Ms. Mojaddidi required a mentor not for her own benefit but for the benefit and protection of Hamid Hayat, to whom both Ms. Mojaddidi and Mr. Riordan owed a duty of loyalty and competent advocacy.  The government's implicit suggestion that Mr. Riordan – to protect Ms. Mojaddidi's reputation or to "mentor" her – was somehow obligated to bury legal issues that could lead to the vindication of an innocent man – is astonishing, particularly given that the government's interest in a criminal case "is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935).

In short, the government's claim of improprieties on the part of Mr. Riordan in working with Ms. Mojaddidi on petitioner's new trial motion while preparing petitioner's appeal and initial 2255 motion is baseless.

## III.   THE GOVERNMENT'S SHRILL ACCUSATIONS OF INTEREST-DRIVEN MISCONDUCT ON MR. RIORDAN'S PART ARE MERITLESS

The government claims that Mr. Riordan's testimony is "hopelessly unreliable" (Opp. at 49:3) due to his "overheated passion for this case" (*Id.* at 4:19); the "confirmation bias of an impassioned and interested advocate" (*Id*. at 41: 23-24), "his passion for Hayat's case" (*Id*. at 43:22), his "impressions shaded by an impassioned advocate…" (*Id*. at 54:6), and the fact that "as time passed…Mr. Riordan's passion for Hayat's habeas claims grew." (*Id*. at 55:2-3). But it is the government's rhetoric, and not Mr. Riordan's advocacy, that is "overheated" and biased.

The government complains that "[f]or more than ten years, Mr. Riordan has labored to free Hayat" and that he "has filed thousands of pages of written arguments and supporting exhibits in post-trial motions, on direct appeal, and in support of this habeas action." (Opp. at 4:15-17). The government then claims that Mr. Riordan's admittedly zealous advocacy during the pendency of this case is somehow improper.  The government generally misapprehends the role of defense counsel and belittles the importance of adversarial testing in our criminal justice system.

Hamid Hayat, like all criminal defendants, has a right under the Fourteenth Amendment Due Process Clause to the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  Mr. Riordan's role as appellate attorney demanded that he pursue Hamid's case as an "interested advocate" and not as an impartial observer or, as the government seems to wish, as a supporter of the government's position. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Id.* at 394 (quoting *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963).[2]  Thus, the government's disparagement of Mr. Riordan's "impassioned advocacy" reveals the government's apparent disdain for the constitutional protections to which every defendant is entitled in our adversarial system.

The government's complaints about the diligence and duration of Mr. Riordan's advocacy also ignore its own role, and the role of the judicial system, in the delays that have plagued this case since Hamid's conviction in 2006.  Hamid's appeal remained submitted in the Ninth Circuit without opinion for *four years. United States v. Hayat,* 710 F.3d 875 (9th Cir. 2013) (argued and submitted June 10, 2009). His petition for habeas corpus has been pending in this Court for another *five* years since his appeal was decided.  During those years Mr. Riordan has litigated hundreds of cases and represented scores of individuals and entities.  While the amount of time Mr. Riordan has devoted to Hamid's case is substantial, it is a mere fraction of the work Mr. Riordan has done on other matters

---

[2] As the Supreme Court noted in *Strickland,* regarding the Sixth Amendment right to counsel at trial: "That a person who happens to be a lawyer is present alongside the accused, however, is not enough to satisfy the constitutional command."  466 U.S. at 685.

8     DEFENDANT HAMID HAYAT'S REPLY BRIEF
REGARDING THE TESTIMONY OF DENNIS
RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

since he began representing Hamid.  *See* Appendix A (list prepared by the office of Riordan & Horgan of Mr. Riordan's cases since 2006).

The government's personal attack on Mr. Riordan and his testimony contains multiple misstatements of fact, almost all not worth detailing.[3] The Court is fully aware of Mr. Riordan's role as an advocate, his testimony as a witness, and the record in this case.  The Court has observed both the testimony of Ms. Mojaddidi and Mr. Riordan.  The Court is thus well-positioned to decide their relative credibility and the *ad hominem* attacks on Mr. Riordan by the government are both unnecessary and baseless.

Dated: June 18, 2018

Respectfully submitted,

BOERSCH SHAPIRO LLP


 */s/ Martha Boersch*
Martha Boersch

Attorneys for Defendant
HAMID HAYAT

---

[3] One, however, must be pointed out.  The government located a typographical error in Mr. Riordan's 2007 declaration and castigates him and Mr. Horgan for it. "Neither Mr. Riordan nor Mr. Horgan appears to have applied much scrutiny in his review [of the declaration] because both failed to catch and correct clear fact errors, like Mr. Riordan's assertion that Hayat made his initial appearance in 2006 *instead of 2007*, when it actually happened." (Opp. at 49:15-18; emphasis added) The government is quite correct that petitioner's initial appearance was not in 2006; it was in June of 2005, as the rest of Mr. Riordan's declaration is clear. Thus, in its victorious cry of "2007," the government took Mr. Riordan's error and raised him by 100%.

9   DEFENDANT HAMID HAYAT'S REPLY BRIEF
REGARDING THE TESTIMONY OF DENNIS
RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB