SHAFFY MOEEL (California SBN 238732)
Moeel Law Office
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Tel.: (415) 735-5021
*Counsel for Proposed Amicus Curiae*
*Center on Wrongful Convictions*

LAURA NIRIDER (IL Bar No. 6297299)
STEVEN A. DRIZIN (IL Bar No. 6193320)
Center on Wrongful Convictions
Northwestern University School of Law
375 East Chicago Ave., 8th Floor
Chicago, Illinois 60611
Telephone: (312) 503-8576
Facsimile: (312) 503-8977

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent/Plaintiff,<br><br>　v.<br><br>HAMID HAYAT,<br><br>　　　　　　　Petitioner/Defendant. | No.CR S-05-0240 GEB<br><br>**MOTION OF THE CENTER ON WRONGFUL CONVICTIONS FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF**<br><br>Judge: Hon. Garland E. Burrell |

Applicant the CENTER ON WRONGFUL CONVICTIONS respectfully moves this Court for leave to file the accompanying brief as *amicus curiae*.

## I. THE MOVANT'S INTEREST

The Center on Wrongful Convictions ("CWC") operates under the auspices of the Bluhm Legal Clinic at Northwestern University School of Law. One of the oldest so-called "innocence projects" in the country, the Center on Wrongful Convictions was founded in 1999 in order to uncover and remedy wrongful convictions nationwide, as well as to promote public awareness and support for nationwide initiatives aimed at preventing future wrongful convictions. To date, the CWC has helped exonerate nearly fifty individuals in twenty-two states and four federal circuits.  It also regularly files *amicus* briefs in fora ranging from state trial courts to the federal courts of appeal to the United States Supreme Court.[1]

Much of the CWC's work focuses on how individuals react to police interrogations.  Indeed, CWC faculty, including the authors of this brief, have been recognized as some of the nation's leading legal experts in confessions and interrogations.  No fewer than twenty of the CWC's nearly fifty exonerations involve individuals who falsely confessed to the crimes for which they were wrongly convicted.  Drawing from this experience, CWC faculty have published numerous groundbreaking pieces highlighting risk factors for, and developing solutions to prevent, involuntary and false confessions.[2]  The CWC's scholarly research around interrogations has been cited

---

[1] Most recently in California, the CWC filed an *amicus* brief in the 2015 case of a thirteen-year-old boy who had confessed to committing a lewd and lascivious act upon a child.  On appeal, the California Court of Appeals reversed the boy's adjudication, finding that the confession was coerced and unreliable and writing a nationally influential opinion exploring the problem of false confessions.  *In re Elias V.*, (2015) 237 Cal.App.4th 568.

[2] *See, e.g.*, True Stories of False Confessions (Rob Warden & Steven A. Drizin eds., 2009); Joshua A. Tepfer, Laura H. Nirider & Lynda Tricarico, *Arresting Development: Convictions of Innocent Youth*, 62 RUTGERS L. REV. 887 (2010); Joshua A. Tepfer, Laura H. Nirider, & Steven A. Drizin, *Scrutinizing Confessions in a New Era of Juvenile Jurisprudence*, Court Review: The Journal of the American Judges Association, 50:1, at 4-11; Laura H. Nirider *et al.*, *Combating Contamination in Confession Cases*, 79 U. Chicago L. Rev. 837, 847 (2012).

1

repeatedly by the U.S. Supreme Court to establish the proposition that the pressures of custodial interrogation "can induce a frighteningly high percentage of people to confess to crimes that they never committed,"[3] and that the risk of false confession is "all the more troubling – and recent studies suggest, all the more acute – when the subject of custodial interrogation is a juvenile."[4]

CWC faculty regularly collaborate with law enforcement, prosecutors, psychologists, the defense bar, law professors, and exonerees to generate commonsense reforms around interrogations that will reduce the risk of false confessions. Among other things, the CWC has partnered with the International Association of Chiefs of Police (IACP), leading global police training firm Wicklander Zulawski LLP, and the Office of Juvenile Justice and Delinquency Prevention to establish data-driven best practices for questioning young adults.[5] To implement these recommendations, the CWC trains law enforcement around the country on interrogations and confessions, including in California. CWC faculty are also regularly featured at National Association of Criminal Defense Lawyers conferences, American Bar Association conferences, National Forensic College conferences, and state public defender conferences to train defense attorneys how to litigate false confession cases.

As proposed *amicus curiae* in this case, the CWC submits this brief in order to set forth the studies and research surrounding the phenomenon of false confessions, as well as to offer assistance to this Court concerning the necessary standards of practice required of defense attorneys in false confession cases. Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, proposed *amicus* states that no party or party's counsel authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission

---

[3] *Corley v. United States*, 556 U.S. 303, 320 (2009) (citing Steven A. Drizin & Richard Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. Rev. 891, 906-07 (2004)).

[4] *J.D.B. v. North Carolina*, 131 S. Ct. 2394 (2011) (citing Brief for Center on Wrongful Convictions of Youth et al. as Amici Curiae 21-22 (collecting empirical studies that "illustrate the heightened risk of false confessions from youth")).

[5] Int'l Ass'n of Chiefs of Police, *Reducing Risks: An Executive's Guide to Effective Juvenile Interview and Interrogation* (2012), *available online at* http://www.theiacp.org/portals/0/pdfs/ReducingRisksAnExecutiveGuidetoEffectiveJuvenileInterviewandInterrogation.pdf.

2

of this brief. No one other than *amicus curiae* made a monetary contribution to fund this brief's preparation or submission.

## II.   ARGUMENT

There is authority suggesting that no statute or rule governs a federal district court's power to grant or deny leave to file an *amicus* brief. "There are no strict prerequisites that must be established prior to qualifying for *amicus* status; an individual seeking to appear as *amicus* must merely make a showing that his participation is useful or otherwise desirable to the court." *In re Roxford Foods Litigation*, 790 F. Supp. 987, 997 (E.D. Cal. 1991) (quoting *United States v. Louisiana*, 751 F. Supp. 608, 620 (E.D. La. 1990)). As a general matter, "[d]istrict courts frequently welcome *amicus* briefs from nonparties concerning legal issues that have potential ramifications beyond the parties directly involved or if the *amicus* has 'unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide." *Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).

Before this Court, Federal Rule of Criminal Procedure 58(g)(1) imports the Federal Rules of Appellate Procedure. Rule 29 of the Federal Rules of Appellate Procedure sets forth standards for filing an *amicus* brief in the United States Court of Appeals, and generally requires a proposed *amicus* file the proposed brief with their motion and demonstrate that it is useful to the Court and timely. We do so below.

### A.  Why the Proposed Memorandum is Useful to the Court

An *amicus* brief is desirable because Mr. Hayat's principal brief, which very ably marshals the facts and law in this case, explains neither the available data on the number of false confession cases that have been uncovered nor the reasons for which false confessions can and have occurred in cases such as Mr. Hayat's. Indeed, the principal brief does not cite or explain the abundant and generally accepted psychological studies that link certain police interrogation tactics seen in Mr.

Hayat's case, like promises of help and false evidence ploys, to proven false confessions.  By providing this vital contextual information, the Center believes that its brief will aid this Court's determination whether to adopt the Magistrate Judge's Report and Recommendation concerning Mr. Hayat's confession-related ineffective assistance of counsel claims, including counsel's failure to call a qualified confessions expert as well as counsel's failure to investigate alibi evidence that could have been used to challenge Mr. Hayat's confession.

Of similar assistance to the Court, the proposed *amicus* brief also presents legal and psychological publications that provide guidance on standard practices for defense attorneys who litigate false confession cases.  As home to some of the nation's leading legal experts on interrogations and confessions, and as a common trainer of both law enforcement and defense attorneys around false confession cases, the Center is uniquely positioned to be of assistance to the Court.

**B.  Why the *Amicus* Filing is Timely**

Pursuant to Rule 29(e) of the Federal Rules of Appellate Procedure, *amicus* briefs in the United States Court of Appeals are generally due within seven days of the filing of the appellant's principal brief, though the Court "may grant leave for later filing."  Undersigned counsel is informed that Mr. Hayat filed his principal brief before this Court on Saturday, May 4, 2019.  Undersigned counsel submits that this motion and the attached proposed *amicus* brief are timely filed, as both have been filed within seven days of that date.

**Conclusion**

The Center on Wrongful Convictions has unique expertise on the problem of false confessions that bears directly on this Court's consideration of the ineffective assistance of counsel claims at issue in Mr. Hayat's case.  The Center's expertise, which has been accepted via the *amicus* process in fora around the country including the United States Supreme Court, goes beyond the facts and law presented in Mr. Hayat's principal brief and will assist this Court by providing important

empirical, legal, and psychological context.  For these reasons, the Center on Wrongful Convictions respectfully moves this Court to grant this application for leave to file the accompanying *amicus curiae* brief addressing the issues set out above.

Respectfully submitted,
/s/ Shaffy Moeel, Esq.
Shaffy Moeel, Esq.
Moeel Law Office
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Tel.: (415) 735-5021
*Counsel for Proposed Amicus Curiae*

LAURA NIRIDER (IL Bar No. 6297299)
STEVEN A. DRIZIN (IL Bar No. 6193320)
Center on Wrongful Convictions
Bluhm Legal Clinic
Northwestern University School of Law
375 East Chicago Ave., 8th Floor
Chicago, Illinois 60611
Telephone: (312) 503-8576
Facsimile: (312) 503-8977

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2019, I filed the foregoing Motion with the Clerk of the Court using the CM-ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: May 10, 2019.

Respectfully submitted,
/s/ SHAFFY MOEEL, Esq. (Cal. SBN 238732)
Moeel Law Office
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Tel.: (415) 735-5021
*Counsel for Proposed Amicus Curiae*

LAURA NIRIDER (IL Bar No. 6297299)
STEVEN A. DRIZIN (IL Bar No. 6193320)
Center on Wrongful Convictions
Bluhm Legal Clinic
Northwestern University School of Law
375 East Chicago Ave., 8th Floor
Chicago, Illinois 60611
Telephone: (312) 503-8576
Facsimile: (312) 503-8977

6